## HAYDEN W. FISHER, et al., v. JAMES CONWAY.

1. ACTION FOR TRESPASS ONLY, *Error to Admit Testimony of Assault and Battery.* Where the only cause of action stated in the plaintiff's petition was that defendants threw down and opened plaintiff's fence and entered plaintiff's close and there threshed and carried away a certain amount of grain, and on the trial it appeared that plaintiff's wife forcibly resisted such trespass, *held*, that it was error to permit testimony as to the character and extent of the injuries she received and the length of time she was incapacitated from labor in consequence thereof.

2. WIFE, *When Her Husband's Agent.* When in the absence of the husband from home, the wife acts in protection of property claimed by him and within the home limits, although without any express direction or agreement, she is acting as his agent, and will be a competent witness in an action by or against him, as to what she does and resists.

3. PARTY TO ACTION; *Right to Testify, When; Limiting the Number of Witnesses.* Every person who is a party to an action and not incompetent to testify, has a right, in protection of his interests, to be heard as a witness as to what he has seen and knows of the principal matter in controversy; and the court may not, by limiting the number of witnesses on a side, deprive him of that right.

4. IMPEACHING WITNESS, *When not to be Excluded from Testifying.* Impeachment is an attack upon the present credibility of a witness; and an impeaching witness, who testifies that he knows the general reputation for truth and veracity, will not be excluded from giving testimony as to that reputation because it appears that such knowledge has been obtained and is based solely upon matters transpiring since the commencement of the action: that fact affects the weight and not the competency of the impeaching testimony.

### *Error from Morris District Court.*

CONWAY recovered a judgment against *Fisher* and others, at April Term, 1877, of the district court, and *Fisher* brings the case here for review. The opinion contains a sufficient statement of the facts.

*Bradley & Nicholson,* for plaintiffs in error:

It was error to admit James Conway to testify as to the condition in which he found his wife on his return to his house on the day of the alleged trespass. The action was not to recover damages for injuries done to the plaintiff's wife, and evidence that she was bruised and wounded could only tend to prejudice the jury against the defendants below.

Again, the court erred in permitting James Conway to testify as an expert. It was not pretended that he was a physician or surgeon, or even acquainted with the first principles of medicine or surgery, yet the court permitted him to testify to the jury that his wife, Catherine Conway, was confined to her bed for two months in consequence of the wounds received by her from the defendants below at the time of the alleged trespass.

The court erred in permitting Beach, a physician and surgeon, to testify to the condition in which he found the wife of the plaintiff below, on the day of the alleged trespass and afterward, and as to the wounds and bruises upon her at that time and their effect upon her, for she was not a party to the suit, and the action was not for injuries to her person, nor for damages because James Conway was deprived of her services. Special damages must be set forth in the complaint, or they cannot be recovered. (*Armstrong v. Perey,* 5 Wend.

535; *Low v. Archer*, 2 Kern. 277; *Bennett v. Lockwood*, 20 Wend. 223; *Crane v. Petrie*, 6 Hill, 522; *Solms v. Lias*, 16 Abb. 311.) And consequential damages which do not necessarily arise from the injury complained of, must be specially declared. (*Slack v. Brown*, 13 Wend. 390; *Strong v. Whitehead*, 12 Wend. 64.) Such evidence was not in any manner germane to the issue, and could have only one effect—to prejudice the jury against the defendants.

The court erred in permitting Conway's wife to testify on behalf of her husband, for she had not acted as his agent, and the statute disqualified her as a witness in her husband's behalf; also, the court erred in permitting plaintiff below to introduce new evidence which was not in rebuttal but in support of the original case of plaintiff below, after defendants below had rested; also, the court erred in permitting Conway to introduce evidence bolstering up his character for truth and veracity by showing that his reputation for truth and veracity was not bad outside of the community in which he resided, and in communities in which he was not known.

The court had already permitted Conway's wife to testify on behalf of her husband, and Dr. Beach, Frank Doran and James Conway had been called in to bolster up her evidence; and yet the court held that only *four* witnesses could be permitted to testify on behalf of H. W. Fisher and the others, defendants below, and to contradict the above-named witnesses. All the defendants below were not permitted to testify in their own behalf. They ought not to have been deprived of this right.

The court erred in refusing to allow defendants below to show what was James Conway's reputation for truth and veracity in the neighborhood in which he resided at the time of the trial. The court held that all inquiry as to James Conway's reputation for truth and veracity must be confined to a time prior to the commencement of the action. The action was commenced July 14th, 1876, and was tried April 27th, 1877. The question was not upon the doctrine of reformation, redemption, and the salvation of souls, nor upon

the foreordination, election, and total-depravity dogma; but it was and is a plain, practical, common-sense question of justice and right, for the law is just and reasonable, and does not presume a man to be a notorious liar to-day because he bore such a reputation a year ago; neither does it presume him to be a saint to-day because he was believed saintly a year ago. The question as to a witness's reputation is confined to the time when he testifies. It is, "Is that reputation good, or bad?" and not, "Was that reputation good, or bad, one year ago?"

The opinion of the court was delivered by

BREWER, J.: This was an action, brought by James Conway as plaintiff, against Hayden. W. Fisher, and others, as defendants, in the district court of Morris county, to recover damages for an alleged trespass by said Fisher, and others, plaintiffs in error, upon the premises of said Conway, defendant in error. The only cause of action set forth in Conway's petition, is:

"That defendants threw down and opened plaintiff's fence and entered plaintiff's close, situate upon the west half of the northwest quarter of section twelve, in township fifteen, range eight, in Morris county, and there threshed and carried away a large quantity of the plaintiff's grain, consisting of wheat and oats, to wit, eight hundred bushels, and of the value of one thousand dollars, and converted and disposed of the same to their use, to the damage of plaintiff, $2,000."

The plaintiffs in error denied each and every allegation in said Conway's petition, and the case was tried before a jury, at the April Term, 1877, of the Morris county district court. The jury found for the plaintiff below, Conway, and assessed his damages at $140. The defendants below moved for a new trial. The court remitted $40 of the damages, reducing the amount of damages recovered to $100, and overruled the motion for a new trial, to which ruling defendants below excepted. Judgment was rendered by the district court in favor of Conway and against Fisher, and others, for $100

damages and the costs of the action, and defendants below, as plaintiffs in error, bring the case to this court.

The plaintiffs in error allege that the district court erred on the trial of said action in admitting certain testimony in behalf of James Conway over the objections of plaintiffs in error.

It appears that Conway and Fisher were claimants of the same tract of land. and each seeking to hold possession; and out of this dispute grew the trespass complained of. The ground was plowed by one, and sowed by the other; the grain was cut by one, and stacked by the other; and finally, one day, in the absence of Conway, Fisher and his friends entered, and threshed and carried away the grain. Mrs. Conway attempted to prevent this action on the part of defendants, and, according to her testimony, was assaulted and severely bruised. Testimony was admitted to show the character and extent of her injuries, and the length of time she was laid up in consequence thereof. This was objected to, and in this is the first alleged error. And we think the allegation of error must be sustained. The petition in no manner counted on personal injuries. There was no claim for damages for loss of his wife's services. There was, as shown above, simply a charge of trespass in entering plaintiff's premises, threshing and carrying away grain. Now, while all the circumstances

1. Action for tres-pass only, testi-mony of assault and battery in-admissible. of such trespass and whatever was done in its actual accomplishment might properly be narrated before the jury as a part of the *res gestæ*, although it involved the commission of an assault and battery, yet no after-matters resulting from the assault and battery were proper. They were not a part of the trespass. The assault and battery was the subject of an independent action, and in that action the extent of the injuries would be proper subjects for inquiry. But in the matter at bar, whether Mrs. Conway was more or less injured, whether she was laid up for one day or one year, in no manner affected the trespass complained of, or added to the value of the grain carried

away. It simply served to prejudice the jury against the defendants. There was error therefore in its admission. And, indeed, though the circumstances and manner of the trespass were proper matters of testimony, the court should have instructed the jury that no claim was made on account of personal injuries or for loss of service.

A second alleged error is in permitting Mrs. Conway to testify on behalf of her husband. The testimony she gave was of the coming of the defendants upon the premises, and her efforts to prevent them from committing the trespass, and their violence to her in resisting such efforts. All this took place during the absence of her husband from the premises. It amounted simply to this: she testified as to her efforts in his absence to protect his property. Was she competent therefor? Chap. 165, laws 1872, declares that, "The following persons shall be incompetent to testify: . . . *Third,* Husband and wife, for or against each other, except concerning transactions in which one acted as the agent of the other." There was no evidence of any express contract between Conway and his wife, or of any direction from him to her in respect to the care of this property during his absence. The agency, if one existed, was one to be implied from the circumstances. Now it may be conceded that the mere fact of the absence of the husband from home does not constitute his wife his agent so far as to make her a competent witness as to everything transpiring during his absence; and to that effect is the case of *Bates, et al., v. Cilley,* 47 Vt. 1, in which plaintiffs brought action to recover damages for the bite of a dog, and in which defendant sought to show by his wife what marks of a bite were visible upon the person of Mrs. Bates immediately after the alleged biting, the same having taken place during his absence from home. On the other hand, in *Butts v. Newton,* 29 Wis. 639, it appeared that immediately after the absconding of the husband the wife sold certain property belonging to him, and it was held that she was not his agent generally for the purpose of sale, though it was remarked by the court that under those circumstances she would

doubtless be his agent to sell so far as was necessary for the maintenance of herself and family.    And in *O'Conner v. H. F. Ins. Co.*, 31 Wis. 167, where it appeared that the husband was making a lengthy absence from home, during which his home was destroyed by fire, and she as his agent furnished proofs of loss, it was held that she was a competent witness thereto, and that without any express authority to act as his agent.    The ruling of the district court was within the spirit of these decisions, and was correct.    And we think it may be stated as a general proposition, that whenever in the absence of the husband from his home the wife acts in protection of property claimed by the husband and within the circle of the home, although without any express direction, she is acting as his agent, and will be a competent witness as to what she does and resists.    In his absence she represents him, as his agent, so far as the preservation and protection of the home and its appurtenances are concerned.

2. Wife, when her husband's agent.

Again, it is claimed that the court erred in limiting the number of witnesses on the part of the defense.    After four witnesses had testified on the part of the defense to the circumstances of the entry upon the premises, the difficulty with Mrs. Conway, and the threshing, the court refused to permit any further witnesses upon these matters.    In this, we think the court erred.    It is doubtless true as to any collateral matter, as the impeachment of a witness, that the court may restrict the number of witnesses, and unless it appears that there had been an abuse of discretion in that respect, no error will lie. (*Anthony v. Smith*, 4 Bos. 503.)    Perhaps, also, the court may have to some extent a like power, even where the testimony runs to the matter principally and directly in dispute; though see upon this, *Hubble v. Osborn*, 31 Ind. 249; *White v. Hermann*, 51 Ill. 243.    But still it may not prevent any defendant against whom a recovery is sought from being heard upon the witness stand as to what he knows of the matters charged against him.    Here, the plaintiff sued eleven parties for an alleged

3. Party to action; right to testify, when; limiting number of witnesses.

trespass. They denied the trespass. That was a denial good for each of them, and each one had a right to tell the jury what he saw and knew of the transaction. The rights of no one defendant were greater than those of any other; and the court could not compel them to select which of their number should be witnesses and which should not, or, as appears to have been done, after some had testified, forbid the rest from the witness stand.

Another matter of alleged error is in the ruling of the court in reference to impeaching testimony. It excluded all testimony of knowledge of plaintiff's reputation for truth and veracity based upon rumors and reports since the commencement of the action. In other words, the court made this inquiry, "What *was* the plaintiff's reputation for truth and veracity before the commencement of this action?" and not, "What *is* his reputation to-day, when he is testifying?" In this was error. Impeaching testimony is for the purpose of discrediting the witness, by showing that the community in which he lives do not believe what he says; that he is such a notorious liar that he is generally disbelieved. It is his present credibility that is to be attacked; is he now to be believed? What do his neighbors think and say of him at the present time? not, What did they think and say months or years ago? True, general reputation is not established in a day; and so the inquiry is not to be restricted to any particular week, or month, or year. The reputation a man has in any community is based upon all the years, few or many, of his living in such community. He may not have entered the community until after the commencement of the action, and still have established a reputation for truth and veracity, or the reverse; for oft-times a case is not tried until years after its commencement. This very case was commenced in June, 1876, and the new trial which we direct will not take place until two and a half years have passed since its commencement. Surely, a man's reputation may have changed very much in that length of time. If it were bad, he may have reformed; if it were good, he may

*4. Impeaching witness; when not to be excluded from testifying.*

have become a moral wreck. (*Mask v. The State*, 36 Miss. 77.) It is true that when it appears that the impeaching witness bases his testimony upon reports circulated by the enemies of the one whose credibility is attacked, or parties interested in breaking down his testimony, or springing solely out of the prior steps in the controversy, such impeaching testimony carries, as it ought, little weight with a jury; but the weight of testimony is for the jury to determine, the competency alone for the court.

These are the only matters we deem it necessary to notice. No exceptions were taken to the instructions, and if the parties were satisfied with them, it is enough.

For the errors noticed the judgment must be reversed, and the case remanded, with instructions to grant a new trial.

· All the Justices concurring.