State *v.* Worden.

---

THE STATE *vs.* CHARLES WORDEN.

The act of 1874 provided that in all prosecutions the party accused, if he should so elect, might be tried to the court instead of by the jury; and that in such cases the court should have full power to try the case and to render judgment. Held not to conflict with the provisions of the state constitution that every person accused "shall have a speedy public trial by an impartial jury," and that "the right of trial by jury shall remain inviolate."

The statute which provides that every person who shall carnally know and abuse any female child under ten years of age shall be punished by imprisonment in the state prison for not less than seven nor more than ten years, was not intended to do away with the common law crime of rape where committed on a child under ten years of age.

INDICTMENT for rape upon a female child under ten years of age, in the Superior Court in Fairfield County. The prisoner pleaded not guilty, and under the statute of 1874, elected to be tried by the court, and was afterwards tried by *Culver,* J., and found guilty. The counsel for the prisoner thereupon moved in arrest of judgment, which motion was overruled

and judgment rendered, and the prisoner sentenced to imprisonment for life in the state prison, which was the punishment fixed by statute for the crime of rape. They thereupon filed a motion in error, assigning as error—1st, that under the statute (Gen. Statutes, tit. 20, ch. 12, sec. 7,) which provides that any person who shall carnally know and abuse any female child under the age of ten years, shall be imprisoned in the state prison not less than seven nor more than ten years, there could be no conviction of the common law crime of rape upon such a child; and 2d, that the statute authorizing the prisoner to elect to be tried by the court instead of the jury was unconstitutional and void.

The case was argued at a former term of the court, and by direction of the judges was re-argued at the present term.

*D. B. Lockwood* and *A. H. Averill*, for the plaintiff in error.

*First.* The crime of carnally knowing and abusing a female child under the age of ten years is not the crime of rape, but a distinct offence created by statute. 1 East Crown Law, 435, 436, 448; 1 Russell on Crimes, 929; 3 Chitty Cr. Law, 814; Bishop on Statutory Crimes, §§ 480, 483; Barbour's Cr. Law, 75; *Neale's case,* 1 Denison C. C., 37; *People* v. *Quin,* 50 Barb., 128. It is a necessary ingredient in the crime of rape that the offence be committed against the will of the female; but this ingredient is not necessary to the commission of the offence of carnally knowing and abusing a female child under ten years of age. 1 Russell on Crimes, 926; *State* v. *Picket,* 11 Nev., 255. The word "ravish" in the indictment may be rejected as surplusage. *McComas* v. *The State,* 11 Misso., 116; Bishop on Statutory Crimes, § 486. The whole subject of the carnal abuse of children under ten years of age has been regulated by legislation in many, perhaps all, of the states. 2 Bishop Crim. Law, § 1133; *Commonwealth* v. *Bennett,* 2 Virg. Cas., 235; *Commonwealth* v. *Fields,* 4 Leigh, 648. The first statute on the subject is the statute of Elizabeth, by which, "for plain declaration of law," it is enacted "that if any person shall

unlawfully and carnally know and abuse any woman child under the age of ten years, every such unlawful and carnal knowledge shall be felony, and the offender thereof being duly convicted shall suffer as a felon without allowance of clergy." 2 Bishop Crim. Law, § 1112. This statute has been re-enacted in many of the states with varying penalties. In Massachusetts the penalty was the same as for the crime of rape, to wit, death, from 1642 to 1852, when the penalty was modified for both offences to imprisonment for life. Mass. Rev. Stat., 1836, p. 718; Mass. Rev. Stat., 1860, p. 793; *Commonwealth* v. *Burke*, 105 Mass., 380. The first statute in Connecticut upon the subject of rape is the following: "Capital Lawes established by the General Court the first of December, 1642. Sec. 9. Yf any man shall forceably and without consent ravish any maid or woman that is lawfully married or contracted he shall be put to death. Deut. 22, 25." Colonial Records, 1636–1665, p. 77. This was the law until the revision of 1672. Compilation of 1808, page 304, note 1. In 1672 the following was enacted and continued to be the law until the revision of 1821. " Be it enacted, &c. that if any man shall forcibly and without consent ravish any maid or woman by committing carnal copulation with her against her consent he shall be put to death; provided complaint and prosecution be made forthwith upon the rape." Compilation of 1796, p. 349; Compilation of 1808, p. 304. The Revised Statutes of 1821, page 152, provide as follows: " Sec. 10. Every person who shall commit the crime of rape, and be thereof duly convicted, shall suffer death."—" Sec. 11. Every person who shall carnally know and abuse any female child, under the age of ten years, and shall be thereof duly convicted, shall suffer imprisonment in Newgate prison, during his natural life, or for such other term as the court having cognizance of the offence shall determine. By the statutes of 1835 the penalty is modified as follows: " Sec. 10. Every person who shall commit the crime of rape, and be thereof duly convicted, shall suffer imprisonment in the Connecticut State Prison during his natural life."—" Sec. 11. Any person who shall carnally know and abuse any

female child, under the age of ten years, and shall be thereof duly convicted, shall suffer imprisonment in the Connecticut state prison for a term not less than seven, nor more than ten years." Statutes of 1835, p. 120, 121. And so the law now is. Gen. Statutes, 1875, p. 299, sec. 7.

*Second.* The statute authorizing the prisoner to elect to be tried by the court instead of the jury contravenes the provisions of article 1, sections 9 and 21, of our state constitution.

1. The crime charged, whether rape or carnal abuse, was a felony at the time of the adoption of the constitution in 1818. 2 Bishop Crim. Law, § 1133. Such a crime was triable only by a jury; and it was incompetent for the legislature, under the constitution, to provide for the trial of such a crime without a jury. Sedgwick's Const. Law, 482, 496; 2 Swift's Dig., 403; 4 Black. Com., 349, 350; 1 Chitty Crim. Law, 522; *Stokes* v. *The People*, 53 N. York, 171; *Vose* v. *Cockcroft*, 44 id., 422; *Emerick* v. *Harris*, 1 Binney, 424; *Francis* v. *Baker*, 2 R. Isl., 103; *Guile* v. *Brown*, 38 Conn., 242.

2. In capital and other felonies the accused cannot waive his right to a trial by the common law jury. The state has an interest in the preservation of the liberty of its citizens, and will not allow it to be taken away except by due process of law. Story on Const., § 1780; 4 Black. Com., 349; Sedgwick Const. Law, 474, 494 and note; Cooley on Const. Limitations, 319, 351, 354 and note 2; 1 Benn. & Heard, Lead. Crim. Cases, 492, 496; *Cancemi* v. *The People*, 18 N. York, 128; *Maurer* v. *The People*, 43 id., 1, 4; *Grant* v. *The People*, 4 Parker C. C., 534; *Brimmingstool* v. *The People*, 1 Mich. N. P., 260; *The People* v. *Smith*, 9 Mich., 193; *Hill* v. *The People*, 16 id., 357; *Underwood* v. *The People*, 32 id., 1; *Wilson* v. *The State*, 16 Ark., 601; *Portland* v. *Bangor*, 65 Maine, 120; *Mase* v. *Home Ins. Co.*, 13 Am. Reps., 297, note; *Brown* v. *The State*, 8 Blackf., 561; *Brown* v. *The State*, 16 Ind., 496; *Bond* v. *The State*, 17 Ark., 290; *Work* v. *The State*, 2 Ohio S. R., 296; *Williams* v. *The State*, 12 id., 622; *Goddard* v. *The State*, 12 Conn., 448, 454; *State* v. *Maine*, 27 id., 281. The oath administered to the jury in criminal cases is different from the oath in civil cases, and

different from the oath under which the court acts. 1 Bishop Crim. Procedure, § 983; *State* v. *Jones*, 5 Ala., 666, 673; *Dixon* v. *The State*, 4 G. Greene (Iowa), 381; *State* v. *Ostrander*, 18 Iowa, 435, 452. A plea of not guilty to an information or indictment for crime, whether felony or misdemeanor, puts the accused upon the country and can be tried by a jury only. The rule is universal as to felonies. The right of trial by jury upon indictment or information for crime is secured by the constitution upon a principle of public policy and cannot be waived. Forsyth's Trial by Jury, 354, 382; Cooley's Const. Lim., 319, 410 and note; Proffat's Trial by Jury, § 113; *State* v. *Lockwood*, 43 Wis., 403; *Neales* v. *The State*, 10 Misso., 498; *State* v. *Mansfield*, 41 id., 470; *Commonwealth* v. *Shaw*, 1 Pittsburg, 492. In the cases where it has been held that it is competent to deny the parties the privilege of a trial in a court of first instance provided the right is allowed on appeal, recent adjudications show that this does not apply to criminal cases. Cooley Const. Lim., 410, and cases there cited; *Matter of Dana*, 7 Benedict, 1. In a criminal case the interests of society are involved and jurisdictional questions cannot be waived. A man cannot dispose of his life by arbitration. Life and liberty are inalienable rights. *Vose* v. *Cockroft*, 44 N. York, 422; Cooley's Const. Lim., 181, 319, and cases there cited; 1 Wharton's Crim. Law, § 751 *b*.

3. The position that the right of trial by jury is secured to persons accused of felony by the constitution secures the further right of trial by an impartial jury. Any act of the legislature providing for the trial otherwise than by a common law jury composed of twelve men would be unconstitutional and void. *Stokes* v. *The People*, 53 N. York, 171; Pomeroy on Const. Law, § 242; *Hart* v. *Granger*, 1 Conn., 169. The waiver can only be made by the party in interest, and is subject to the general control of public policy; and whenever the object of the statute is to promote great public interests, liberty or morals, it cannot be defeated by any private stipulation. Sedgwick Const. Law, 87, 88.

4. The provisions of the constitution involved in this case

are restrictions on legislative power.    The inquiry is whether the will of the representative as expressed in the statute is or is not in conflict with the will of the people as expressed in the constitution.    The legislative power is representative and subordinate, and exists only by virtue of the inherent, inalienable and paramount sovereignty of the people.    Bateman's Const. Law, 76 and note; *Van Horn's Lessee* v. *Dorrance*, 2 Dallas, 307; Cooley's Const. Lim., 85, 87; 2 Kent's Com., 12, 13 and note *b; Matter of John and Cherry Streets*, 19 Wend., 676; *Taylor* v. *Porter*, 4 Hill, 140, 145, 147; *Hake* v. *Henderson*, 4 Dev., (N. C.,) 15; *Rowan* v. *The State*, 30 Wis., 129; *Jones* v. *Robbins*, 8 Gray, 329; Potter's Dwarris on Stat., 364.

5.    The contemporaneous interpretation and practical construction given to the constitution from the time of its adoption, and acquiesence therein down to the passage of the statute in question, and the subsequent repeal of the statute by the legislature, would seem to indicate that the interpretation and construction contended for are correct.    "*Contemporanea expositio est optima et fortissima in lege.*"    Broom's Legal Maxims, 682; Sedgwick Const. Law, 212, 412; Story on Const., §§ 405, 408; *Stuart* v. *Laird*, 1 Cranch, 299; *Moers* v. *City of Reading*, 21 Penn. S. R., 188; *The People* v. *Green*, 2 Wend., 266, 274; *Coutant* v. *The People*, 11 id., 511; Cooley's Const. Lim., 67, 71; *Martin* v. *Hunter's Lessee*, 1 Wheat., 351; *Cohens* v. *Virginia*, 6 id., 418; *Bank of United States* v. *Halstead*, 10 id., 63; *Ogden* v. *Saunders*, 12 id., 290; *Minor* v. *Happersett*, 21 Wall., 162; *The People* v. *Dayton*, 55 N. York, 367; *Weed's Appeal from Probate*, 35 Conn., 455.    If the legislative department has infringed on the constitution the duty of the courts may be arduous and unpleasant, but it is a plain one regardless of the consequences.    Sedgwick on Const. Law, 411; *Oakley* v. *Aspinwall*, 3 Comst., 568.

*J. H. Olmstead*, State's Attorney, for the State.

The constitution of this state provides "that in all criminal prosecutions the accused shall have a right to a speedy public

trial by an impartial jury." Art. 1, sec. 9. Section 21 of the same article provides that "the right of trial by jury shall remain inviolate." Admitting that previous to the adoption of the constitution in 1818, a person charged with the crime of rape had the right to demand a trial by jury, (*Goddard* v. *The State*, 12 Conn., 454, *Hagany* v. *Cohnen*, 29 Ohio S. R., 82,) and that the constitution preserved that right inviolate, could not a person charged with such a crime as rape constitutionally waive that right under our statute and elect to be tried by the court? The statute of 1874 provides that " every person charged with an offence     *     *     * may, if he so elect, when called upon to plead, be tried by the court instead of the jury, and the court may in such case try said cause and render judgment thereon." Gen. Statutes, p. 537. Now, wherein does this conflict with the constitution? That declares "that *the right* of trial by jury shall remain inviolate;" "that the accused shall have *a right* to a speedy public trial by an impartial jury." Does the statute take away *the right* of the accused to a jury trial? Does not *the right* of trial by jury remain inviolate? It cannot be denied but that the right remains to him, unless he *elects* to be tried by the court. And unless he so *elects*, neither the state nor the public is affected by the statute. Can he so elect? The statute permits him. Does the constitution forbid? To the answer to this important question the attention of the court is now particularly invited.

*First.* The most important point to be determined is, to what party or parties does this right of trial by jury belong? To the accused alone, or to the State or public as well? The State says, *to the accused alone,* and for the following reasons: —1st. One clause of the constitution says, the *accused* shall have a *right* to a speedy public trial *by an impartial jury.* It would seem as though the language of this clause is so explicit that it cannot be mistaken. It is not the *State,* but the *accused,* that is to have a *speedy* public trial *by an impartial jury.* In other words, the clause is inserted for the benefit of the accused alone.—2d. The same constitution provides that "the right of trial by jury shall remain invio-

late." Shall remain to whom? The instantaneous and natural answer would be *to the accused*—to the one who is entitled "to have a speedy public trial by an impartial jury," and not to the State. The language of both clauses, when taken together, leads unmistakably to the conclusion that *the right of trial by jury* belongs exclusively to the accused.—3d. Both clauses of the constitution relative *to the right of trial by jury* are contained in Article I., which is wholly devoted to a *Declaration of Rights,* belonging to *men, people, citizens, persons, prisoners,* and those *accused of crimes.* It does not contain a single declaration of any right belonging to the State or public as a corporate power. Men are to be equal in rights, free to worship God, and no preference is to be given to any sect, &c.—4th. From legal history we learn that trial by jury most probably originated in Athens, in the days of Solon. Its principal source has been found in the *dicasterion* of Athens. It was the right conferred upon freemen, when accused of crime, to be tried by the *dicastes* selected from the freemen. It cannot be doubted that the legal procedure of Rome was, to a great extent, derived from and formed by that of Athens. Hence we find the *dicastes* of Athens, when transferred to Rome, become the *judices* of Rome. We are told that the Roman *judex* would be much better translated by the word "juryman," the office of the Roman *judex* being similar to our juryman. The right to be tried by *judices* was conferred upon Roman citizens. By the Romans the idea of jury trial was carried among the Saxons, and the Saxons brought into England the trial by compurgators, which was similar to jury trial. The Saxons fixed the number, on trial by compurgators, at twelve. Glanville represents trial by jury in one of its most important forms and purposes, as introduced in the reign of Henry II. He calls it "*a royal benefit, conferred upon the people by the goodness of the Sovereign, with the advice of the nobility.*" Blackstone says that the establishment of trial by jury in England "was always so highly esteemed and valued *by the people,* that no conquest, no change of government, could ever prevail to abolish it." Again he speaks of it as "*a privilege* which is couched in

almost the same words with that of the Emperor Conrad, two hundred years before." And then he says, "it was ever esteemed, in all countries, a *privilege* of the highest and most beneficial nature." 3 Black. Com., 350. Again he says, "trial by jury is the *most transcendent privilege which any subject can enjoy or wish for;* that he cannot be affected, either in his property, his liberty, or his person, but by the unanimous consent of twelve of his neighbors and equals." 3 Black. Com., 379. We find that anciently, when issue is joined by these words, "and this the said *A* prays may be inquired of by the country," or "and of this he puts himself upon the country," a writ of *venire facias* was issued to summon "*twelve free and lawful men.*" 3 Black. Com., 352. This last shows conclusively that trial by jury was not only a *privilege belonging to the party*, but that he could avail himself of it or not, as he elected to close his issue to the country or otherwise. And so in criminal cases, anciently "when a prisoner on his arraignment has pleaded *not guilty*, and for his trial hath put himself upon the country, the sheriff of the county must return a panel of jurors." 4 Black. Com., 350. So it would appear that even in criminal cases, although the accused was entitled to the privilege of a jury, he was not compelled to be so tried. In later times, during the past and present age, the most able jurists have declared trial by jury to be a right or privilege given *to the accused* when upon trial on a criminal charge. 2 Kent's Com., 12, 13. The constitution of Ohio has two clauses identical with our own, relating to trial by jury, and her court has decided that they are introduced to secure to the party accused of crime this right, and that it belongs *alone to him*. *Work* v. *The State*, 2 Ohio S. R., 297. Must we not conclude then that the right or privilege of trial by jury is to remain inviolate in the accused, and not in the State?

*Second.* If a party accused of crime has the right or privilege of trial by jury conferred upon and secured to him, is he bound to be tried by a jury, whether he desires it or not?

1. We reply—Yes, if a jury is the only tribunal provided by law for his trial. If there is no law in a state which gives

to the court the right to try a criminal, *if he so elects,* most certainly the court has no right to try him, because the court is no more a legal tribunal for that purpose than if it did not exist. The cases cited on the brief of the prisoner's counsel in which decisions have been made against the right of the accused to waive a trial by jury are all believed to be in states where no power has by law been conferred upon the *court* to try the accused. The *jury* is the only tribunal provided by law in those states. Hence the decisions in those states are undoubtedly correct. *State* v. *Maine,* 27 Conn., 281; *Dillingham* v. *The State,* 5 Ohio S. R., 283. It was thus in the case of *Cancemi* v. *The People,* 18 N. York, 128. There the accused was tried by eleven jurors. And in the case of *Hill* v. *The People,* 16 Mich., 357, the accused went to trial with eleven qualified jurors and one alien, and the court held that he was tried by eleven jurors. Now it has been held repeatedly that a *jury* can not consist of less than twelve jurors. *Work* v. *The State,* 2 Ohio S. R., 296; *Bullard* v. *The State,* 1 Am. Crim. R., 577. The accused in these cases had no trial by a tribunal recognized by the law. The accused could not agree to be tried by a certain number of jurors less than twelve, any more than they could agree with the prosecuting attorney to go to prison for a certain number of years in satisfaction for the offence charged. Now in the case at bar no such objection can be raised. The statute provides that the accused may be tried by the court if he so *elects,* and *the court is empowered* to try him and render judgment against him. If he does not so elect, he is tried by a jury—that right remains to *him* inviolate. He has the choice of either. His *right* is not interfered with. Why may he not waive the right? Why may he not *elect* to be tried by the court, as the law has given it jurisdiction?

2. Let us consider some of the objections that may be raised.—1st. It may be said that to allow the accused to elect to be tried by the court, would be permitting him to throw too much responsibility on the court. This if true, which we deny, goes to the *expediency* of the law and not to its *validity.* —2d. It may be urged that a single judge in whom so much

State *v.* Worden.

power is placed might be corrupted. With much more reason it might be urged against a jury, that *one* of its members might he bribed, or that the Attorney for the State, having power to enter a nolle before trial has commenced, might be bribed. But if a valid objection, it shows the *inexpediency* of the law, and not its *invalidity.*—3d. It may be objected that to allow such a departure from the time-honored *compulsory* jury trial, would sap the foundation of jury trials and eventually destroy them. This objection is invalid because the right or privilege of trial by jury remains inviolate to the accused, and *ever must,* unless he himself relinquishes the right.—4th. It is urged that "the State has an interest in the preservation of the *liberty* of its citizens, and will not allow it to be taken away except by due course of law." Granted to a certain extent, yet how does permitting one accused to elect whether he will be tried by the jury or court conflict with that principle, *at least any* more than permitting him to plead guilty.—5th. But it is urged, and strongly, that one accused of crime cannot waive his right of trial by jury, because the State has an interest in the right of trial by jury as well as the accused; and that the accused, even if he had a right to *waive* and *elect,* could not do so without the consent of the State *given at the time* in some way, either through the action of the Attorney of the State or some one authorized to act for the State, at the time when each case comes up for trial. Now if the State is correct in its claim, that the right of trial by jury is a "benefit," "privilege" or "right" conferred originally upon the "freeman," "citizen," "subject" or "person," a right that belonged *exclusively to such person or persons,* and not to the State, as we think has been shown beyond all question, then the claim that the State must in some way give its consent in each case at the time when a waiver or election is made, falls to the ground and demands no further notice. But suppose the State had the same interest in the right of trial by jury as the accused, and had to give its consent to a waiver or election made, has it not done so here? The constitution provides for a Superior Court, and then declares that its "powers and jurisdiction

*     *     shall be defined by law." Conn. Const., art. 5, sec. 1. The law has conferred upon the Superior Court *power* to try criminals if they so elect. We claim this to be a full consent and waiver on the part of the State, in every case where the accused elects to be tried by the court. The State through its legislature, while not infringing or attempting to infringe upon the right of trial by jury, having left that as it was, has given express consent to every person charged with any offence to be tried by the court if he so elect. What more explicit consent or waiver could there be? The definition of waiver in this state is not in dispute. It is "the relinquishment of a known right." And if waiver is a proper term to apply when the State relinquishes a known right, then certainly the State has waived all right it has in a trial by jury, in every case where a person accused of crime comes into court and elects to be tried by the court instead of the jury.

*Third.* The State claims then that when Worden came into court and elected to be tried by the court, and was so tried, there was no violation of the constitution of this state. The act provides in express terms, that the accused may have his choice of two modes of trial, either by jury or by the court, as he may think proper, and if he supposed the court the safer mode of trial, and expressly waived his right of trial by jury, and requested that the court should try the issue as he did, it is hard to see how his right of trial by jury was violated. The provisions of the constitution were intended to limit the power of the legislature in this particular, and prohibit it from depriving the accused of the right to have a jury of twelve impartial men to pass on his guilt or innocence. The right still existed. He did not choose to avail himself of it, and now after trial, and after he is found guilty, he says, "I have been deprived of my right to a jury trial." Who deprived him of that right? Surely not the court, nor the statute. He has clearly waived his right, and then claims that the law is unconstitutional and void because it permitted him to do so. These words are taken mostly from the case of *Dailey* v. *The State*, 4 Ohio S. R., 60, but

State *v.* Worden.

are as appropriate as if written expressly for this case.  Upon the question as to the right of one charged with crime to waive a trial by jury, and elect to be tried by the court *when there is positive legislative enactment giving the right so to do, and conferring power on the court to try the accused in such a case,* there are but few decisions.  But fortunately some of the states have passed laws permitting this to be done, and we are therefore not entirely without authorities.  And so far as we can learn, in every case where a question has been raised, the statute empowering the court to try, and the accused to waive a jury trial and elect to be tried by the court, has been decided constitutional.  *Dailey* v. *The State*, 4 Ohio S. R., 57; *Dillingham* v. *The State*, 5 id., 280; *State* v. *Maine*, 27 Conn., 281; *Curtis* v. *Gill*, 34 id., 54; *State* v. *Tuller*, id., 295; *The People* v. *Smith*, 9 Mich., 199; *Tabor* v. *Cook*, 15 id., 322, 324; *Ward* v. *The People*, 30 id., 116; *Commonwealth* v. *Dailey*, 12 Cush., 80; *Bank of Columbia* v. *Okely*, 4 Wheat., 235; *People* v. *Goodwin*, 5 Wend., 251; *Neales* v. *The State*, 10 Misso., 498; *State* v. *Mansfield*, 41 id., 470; Bishop on Crim. Proc., § 893.  In Blackstone's Commentaries it is said that " the impartial administration of justice, which secures both our *persons* and our *properties*, is the great end of civil society.  But if that be *entirely* intrusted to the magistracy, a select body of men, and those *generally selected by the prince, or such as enjoy the highest offices in the state*, their decision, in spite of their own natural integrity, will have frequently an involuntary bias towards those of their own rank and dignity; it is not to be expected from human nature that the *few* should be always attentive to the interests and good of the *many*." 3 Black. Com., 379.  This language, while eminently justifiable and appropriate in England .in the age of Blackstone, can have but little force in this country, and especially in Connecticut, where the whole power is in the people, and where the judges are not appointed by hereditary rulers, and where all are equal in rights.  In the declaration of rights in our constitution it is provided that " the people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures."

May one not waive this right and permit without warrant a search of his person and house, and a seizure of his papers? It provides that "the property of no person shall be taken for public use without just compensation therefor," and yet may not one relinquish that right and permit it to be done? It provides that a person accused of crime "shall not be compelled to give evidence against himself," and yet it is provided in Connecticut by statute that "any person shall, at his request, but not otherwise, be a competent witness." Gen. Statutes, p. 538, sec. 7. And when that person goes upon the stand *at his own request*, he is supposed to waive his constitutional right, and he is sworn to testify to the whole truth, and is compelled to do so, whether his testimony is for or against himself. The State says then that constitutional rights can be waived, and *in criminal cases* as well as in civil. Cooley's Const. Lim., 181; Sedgwick's Const. Law, 88; *Baker* v. *Braman*, 6 Hill, 47; *The People* v. *Murray*, 5 id., 468; *Lee* v. *Tillotson*, 24 Wend., 339; *Detmold* v. *Drake*, 46 N. York, 318.

CARPENTER, J. The prisoner was indicted, tried, and convicted of the crime of rape upon a female under ten years of age. The trial, at the prisoner's request, was by the court instead of the jury. The prisoner moved in arrest of judgment on two grounds:—1st, that under our statute the crime of rape cannot be committed upon a child under ten years of age; and 2d, that the statute authorizing him to elect to be tried by the court was unconstitutional and void. The Superior Court overruled the motion in arrest, and the prisoner brings the case before this court by a motion in error.

*First.* At common law it was legally possible to commit this crime upon one under ten years of age; that is to say, if the crime was in every other respect complete, the mere fact that the victim happened to be under the age of ten years did not make it any the less a crime. An essential element of the offense is that it be against the will of the female. Our statute was not intended to abolish the crime of rape in respect to children under ten, but on the contrary was

intended to punish with proportionate severity an act which did not technically constitute a rape. Hence it provides that every person "who shall carnally know and abuse any female child under the age of ten years shall be imprisoned in the state prison not less than seven nor more than ten years." The punishment for rape is imprisonment for life. Here are two distinct offenses. The greater includes the less, as in many other instances, but the less does not extinguish the greater. The latter requires force and the want of consent. The former dispenses with both. The age of the female is not an essential element of the crime of rape, while the statutory offense can only be committed upon children under ten years of age. The statute was manifestly designed to increase, not to diminish, the protection of children of that tender age, and to throw around them additional safeguards. We are not disposed to defeat the object of the statute by so construing it as to invite evil disposed persons to select as their victims young persons who are least able to protect themselves, and to whom the consequences are likely to be more serious.

*Second.* The statute of 1874, which was in force when this case was tried, now repealed, provides that "in all criminal causes, prosecutions and proceedings, the party accused may, if he shall so elect, when called upon to plead, be tried by the court instead of by the jury; and in such cases the court shall have full power to hear and try said cause, and render judgment and sentence thereon."

It is now claimed that that statute is in conflict with the constitution.

There are two clauses, both found in the "Declaration of Rights," which bear upon this subject. The first is found in the 9th section, and clearly refers to the personal rights of a person accused of crime, and secures to him "a speedy public trial by an impartial jury." As this section is not much relied on we pass to consider the 21st section, which reads, "The right of trial by jury shall remain inviolate."

Compared with this language the statute would seem to be in perfect harmony with it. The right to a jury trial

remained to the prisoner. He was not deprived of it, but voluntarily relinquished it.

But it is urged in behalf of the prisoner that the word "right" has a much broader meaning than is ordinarily attached to it, and includes the faculty or privilege which individuals have as persons, as citizens, and as members of the body politic, to demand of the government, acting through all its branches, that certain principles of governmental administration essential to the liberty and welfare of the people shall not be violated; that in this sense it is mainly political, and the interest in its maintenance purely personal to the individual is so interwoven with the interest of the citizens and the body politic that its surrender is placed beyond the power of the individual.

No one by simply reading this section would suppose that the framers of the constitution intended by it to secure a principle of government or the political rights of the people collectively or individually. The natural and obvious meaning is to secure to suitors and persons accused of crime, as individuals, the right and privilege of having their causes heard and determined by a jury; and it is difficult to see how the principles of liberty and self-government, or the interests of the body politic, can in any way be put in jeopardy by a waiver of that right. That clause of the constitution applies to civil as well as criminal causes. The trial by jury in civil causes has been waived for many years, and now a large portion of such causes involving issues of fact are tried by the court; and yet the state does not seem to have suffered any detriment. Aside from questions of public policy, which we will consider presently, we see as little reason for apprehending trouble from the trial of criminal causes by the court.

It is further contended that the word *right*, as used in the section under discussion, is synonymous with *law*. This argument is drawn from the fact that the Latin word *jus*, which is ordinarily translated "right," is sometimes translated "law." Thus the *jus gentium* is the law of nations. But the word right is seldom used in the sense of law. We

State *v.* Worden.

must give to it its primary and natural meaning, unless there is something which clearly indicates that it is used in a different sense.

Let us substitute the word law for right. "The law of trial by jury shall remain inviolate." What is its meaning? Two constructions and two only seem possible. First, we may construe the word law as meaning right; and that brings us precisely where we are now, and limits the word substantially to the individual rights of parties. If that interpretation prevails, it is manifest that the prisoner gains nothing by the substitution.

The only other reasonable construction is to give the word its ordinary meaning. The effect of that would be to give the then existing statutes authorizing and regulating trials by jury the force of a constitutional provision. The absurdity of such a construction will be apparent when we consider that prior to the adoption of the constitution those laws were frequently changed. Indeed the institution itself, of trial by jury, from its first existence to the present time, has barely preserved its own identity. As it existed when our constitution was adopted, and as it is now, it is not the product of any one generation or of any one age; but it is the growth of centuries, changing and improving with time and experience. It cannot be possible that the constitution intended to attach itself to the statute laws then in force and make them unchangeable. It aims rather to place the right beyond the power of the legislature to abridge it, and at the same time to leave it in the power of legislation to improve it and adapt it from time to time to the ever changing phases of human affairs.

If it be attempted to give the word law a more indefinite meaning, and interpret this clause as intended to perpetuate the institution or system of jury trials, the same difficulties will be encountered, for the institution existed by statute and by the common law founded on statutes originally. As such it was liable to modification, if not to repeal. It is true the institution was so thoroughly imbedded in the British constitution that it came to be regarded as the birthright of every

Englishman, and as such was carefully watched and preserved unimpaired through all changes and even revolutions. The very fact that it was so jealously guarded shows that it was not absolutely irrepealable. Moreover it was regarded as the personal right of every one to have his cause tried, or be tried himself if accused of crime, by a jury; so that the word "right" in its ordinary sense expresses the idea more clearly and forcibly than any other, and in that sense alone we think it was used.

It is further claimed that the right of trial by jury covers not only the personal privilege of a single suitor or accused person, but also the interests of jurors, judges and all citizens, in benefits direct and indirect, which the framers of the constitution believed to be involved in the institution of trial by jury.

The interests, feelings and desires of judges and jurors as such we pass by, simply remarking that probably the framers of the constitution did not deem them of sufficient importance to make them even remotely or incidentally the subject of a constitutional provision. In respect to the interests of the public at large it is quite different. Those interests might with propriety perhaps have been protected had it been considered desirable. If such had been the intention we should expect to find somewhere in the constitution language adapted to that end. We should expect too that they would deal with that purpose directly and explicitly. Hence it would not have been left in doubt, nor would it have been hidden in a provision apparently designed to secure personal rights of individuals. We find in the constitution of the United States, which was in force when our constitution was framed, the explicit provision, "The trial of all crimes, except in cases of impeachment, shall be by jury." It would have been easy for our convention to be equally explicit. The fact that the interests of the public in this regard were not expressly provided for furnishes a strong presumption that it was not intended to place the matter beyond legislative control. With the constitution of the United States before the convention, the omission is significant.

Another ground on which the validity of this statute is questioned is, that it is contrary to public policy.

That the law is impolitic and unwise, especially in its application to capital cases and felonies generally, we are ready to concede to the fullest extent. We cannot believe that it is wise or expedient to place the life or liberty of any person accused of crime, even by his own consent, at the disposal of any one man or two men, so long as man is a fallible being. But that is a question for the legislature, and the legislature has reconsidered the matter, and very properly repealed the obnoxious law. We are dealing, not with a question of expediency, but with one of constitutional power. The judiciary has power to declare a statute void for unconstitutionality, and will exercise that power only in clear cases. But we know of no principle of jurisprudence that will justify the court in avoiding a statute on the ground that it is contrary to sound policy. Such a decision would manifestly be an encroachment upon the domain of legislation. We may properly have regard to questions of policy and expediency in applying the principles of the common law, but with the policy or impolicy of a plain statute we have nothing to do. We have no provision in our constitution prohibiting the legislature from violating principles of sound policy by passing unwise laws.

A brief reference to some of the decisions cited in the argument will close this discussion.

In our own state it was held that, inasmuch as there was no statute conferring upon the Superior Court the power to try a criminal charge except through the intervention of a jury, that court without a jury had no power to try it. *State v. Maine*, 27 Conn., 281. Courts elsewhere have held the same doctrine, and to such an extent that it may now be regarded as the established law. The reason is obvious; the law had provided only one tribunal to try criminal causes—the court *and* jury. The Superior Court *without* a jury, in respect to criminal causes, was unknown to the law. Crime in a free civilized country ought never to be punished except through the intervention of the legally constituted tribunals.

But as the statute we are now considering expressly authorizes the Superior Court to try criminal charges, those decisions are inapplicable.

There are decisions in which it is held, especially in capital cases, that it is incompetent for the prisoner to waive the constitutional and statutory jury of twelve men. *Cancemi* v. *The People*, 18 N. York, 128, and cases following that decision. They hold in effect that the absence or disqualification of one or more of the panel cannot be waived, and that a verdict by a jury of less than twelve is not a verdict by a legal jury. In capital cases in favor of life the law will not allow the prisoner to agree to be tried by less than twelve jurors, as that would be in effect to substitute another tribunal for that established by the constitution and laws—a species of arbitration. Those cases are unlike this. In them the question was whether a man could lawfully be tried by a tribunal not known or recognized by law. In this case the question is, whether it is competent for the legislature to provide two tribunals and authorize the trial of the prisoner by one or the other at his election. If a statute should authorize the trial of a prisoner with his consent by eleven jurors, that would present a case more analagous to this.

But in cases not capital it has been held that the disqualification of a juror may be waived, and that by consent a verdict may be rendered by eleven jurors. *Commonwealth* v. *Daily*, 12 Cush., 80, was a prosecution for a misdemeanor. During the trial one juror was withdrawn, and, by consent entered of record, the trial proceeded before eleven jurors. The verdict was sustained, mainly on the ground that the defendant, having waived the objection and taken the chances of a favorable verdict, was precluded from taking the exception after verdict. The case of *State* v. *Tuller*, 34 Conn., 280, was a prosecution for embezzlement. After the jury retired, and before rendering their verdict, it came to the knowledge of the defendant's counsel that a juror had, before the trial, formed and expressed the opinion that the defendant was guilty. This was not brought to the attention of the court until after the verdict was rendered. It was held that

the disqualification was waived, and judgment was rendered on the verdict. There are other similar cases, but it is unnecessary to refer to them.

In Ohio, a statute defining the jurisdiction and regulating the practice of probate courts, which provides that upon a plea other than the plea of guilty, if the defendant do not demand a trial by jury, the probate judge shall proceed to try the issue, was held to be no infringement of the constitution. *Daily* v. *The State*, 4 Ohio St. Reps., 57 ; *Dillingham* v. *The State*, 5 Ohio St. Reps., 280. *Ward* v. *The People*, 30 Mich., 116, is to the same effect.

We find no case in which it is held that the legislature has no power to provide for the trial of criminal causes by the court; while statutes applying to misdemeanors have been held valid where the right to a jury trial remained. In respect to this question of constitutional power we know of no distinction between capital offenses and others—between felonies and misdemeanors.

In respect to the question of waiver in its application to a single juror, courts have distinguished between the higher and lower grades of crime. In its application to a jury trial altogether they have held that there can be no waiver in any case unless authorized by statute, and unless the statute has conferred jurisdiction upon the court. But under the constitution all crimes are upon the same footing in respect to the forum in which they are to be tried. If the statute may authorize the court to try one, we see no reason why it may not authorize the court to try all. Such acts have been held constitutional; we know of no case in which it has been held otherwise.

For the reasons given we think the act in question, so long as it remained unrepealed, was a valid enactment.

There is no error.

In this opinion the other judges concurred; except PARK, C. J., who dissented upon the question of the constitutionality of the act of 1874.