THE PEOPLE OF THE STATE OF NEW YORK ex rel. PATSY BATTISTA, Relator, *v.* FRANK L. CHRISTIAN, as Superintendent of the New York State Reformatory at Elmira, New York, Respondent.*

Supreme Court, Chemung County, February 10, 1928.

Constitutional law — criminal prosecution — indictment — provision of Code of Criminal Procedure, § 222, providing that person may on application be permitted to have information filed against him is unconstitutional where crime is felony — defendant in criminal prosecution cannot waive State Constitution, article 1, § 6 — writ of habeas corpus granted — bail required.

The relator was arrested and brought before a police justice charged with burglary in the third degree and held to await the action of the grand jury. Acting under section 222 of the Code of Criminal Procedure the relator petitioned the Supreme Court asking that an information be filed against him by the district attorney. That was done and relator was arraigned, pleaded guilty and was sentenced.

The relator was improperly convicted, for that part of section 222 of the Code of Criminal Procedure which authorizes the procedure followed in this case is unconstitutional in so far as it relates to a capital or otherwise infamous crime, as in violation of section 6 of article 1 of the State Constitution which provides that no person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury. That provision cannot be waived by a defendant.

While the writ of habeas corpus is sustained and the relator discharged from his imprisonment, the relator must furnish bail conditioned for his appearance to answer the charge and be confined to jail until the bond is forthcoming.

HABEAS CORPUS to inquire as to the imprisonment of the relator in the New York State Reformatory at Elmira, N. Y.

*Dennis W. Hunt,* for the relator.

*Albert Ottinger, Attorney-General,* by *Almon W. Burrell, Assistant,* and *Edward J. Grogan,* attorney, for the respondent.

SENN, J. This is a proceeding by Patsy Battista, the relator, to test the legality of his commitment to the New York State Reformatory at Elmira on a criminal charge after having been proceeded against by information under section 222 of the Code of Criminal Procedure.

The defendant was brought before a police justice charged with the crime of burglary in the third degree and held to await the action of the grand jury. Thereupon he petitioned the Supreme Court in writing, asking that an information be filed against him by the district attorney charging him with the said crime, which was done. The defendant was then arraigned and pleaded guilty to

* Revd., 224 App. Div. ——.

the crime charged whereupon he was sentenced by the judge holding said court to confinement in the New York State Reformatory at Elmira, N. Y., under the rules and provisions of law governing that institution.

Thereafter a writ of habeas corpus was obtained to which return was duly made and the matter is now before me for decision as to the legality of the defendant's imprisonment. The return was not traversed; the provisions of section 222 of the Code of Criminal Procedure as such were followed and the only question before me is as to the constitutionality of the legislative act under which the defendant was convicted and sentenced.

It is claimed on behalf of the relator that section 222, in so far as it permits the prosecution of infamous crimes without indictment, is unconstitutional and void and that, therefore, the relator is illegally restrained of his liberty. On the other hand, it is contended by the Attorney-General that the section in question, by permitting the defendant to choose the manner in which he shall be brought to trial, does not violate the Constitution and that any rights which the defendant might otherwise have had were waived by him.

Article V of the amendments to the Constitution of the United States provides that " No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury   *   *   *."

Section 6, article I, of the Constitution of the State of New York contains the same provision, viz.: " No person shall be held to answer for a capital or otherwise infamous crime   *   *   *   unless on presentment or indictment of a grand jury."

Section 222 of the Code of Criminal Procedure is as follows: " All crimes prosecuted in a supreme court, or in a county court, or in a city court, must be prosecuted by indictment. But, where a defendant has been held to answer to any of these courts, that court, or any of said courts to which he might have been held to answer, may, on the application in writing of the defendant, direct an information to be filed against him for the offense for which he stands charged.

" The information shall be filed and signed by the district attorney of the county wherein the action was begun   *   *   *.

" When the information is filed, the defendant must be arraigned thereon and the court must proceed to trial in the same manner as if an indictment had been presented by a grand jury."

In view of the reluctance of courts to encroach on the domain of legislation, I approach the consideration of the question of law at issue with much diffidence. Perhaps it would be better if

the power to hold legislative acts unconstitutional was given to appellate courts alone and I have observed that it is seldom exercised by courts of original jurisdiction. However, the question of the legality of the relator's conviction and imprisonment is before me for decision and I cannot evade the responsibility.

If the act in question is in conflict with the Constitution, it is not law and the relator is entitled to be discharged; otherwise, he was legally convicted and sentenced and the writ must be dismissed. There is no way that I can pass on the relator's rights under the writ, except by passing on the constitutional question of law. Fortunately, or otherwise, my decision will not be binding on any court or judge of equal or superior jurisdiction, unless affirmed in the appellate courts.

I think it will not be questioned that the relator was charged with an infamous crime. Crimes are infamous either by reason of their punishment or by reason of their nature. In the first class fall all felonies. (Cooley Const. Lim. [8th ed.] 639.) Both at common law and by statute, burglary is an infamous crime; infamous in its punishment and infamous in its nature.

" The question whether a law be void for its repugnancy to the Constitution is at all times a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative in a doubtful case. The court, when impelled by duty to render such a judgment, would be unworthy of its station could it be unmindful of the solemn obligation which that station imposes; but it is not on slight implication and vague conjecture that the Legislature is to be pronounced to have transcended its powers, and its acts to be considered as void. The opposition between the Constitution and the law should be such that the Judge feels a clear and strong conviction of their incompatibility with each other." (Cooley Const. Lim. 374.) The constitutionality of a law is to be presumed. (Id. 375.) " Nor are the courts at liberty to declare an act void, because in their opinion it is opposed to a spirit supposed to pervade the Constitution, but not expressed in words." (Id. 351.)

Great respect is due to the intelligent and deliberate judgment of the Legislature as to the constitutionality of a law and no statute should be lightly or inconsiderately adjudged to be in contravention of the Constitution. A law which has received the sanction of the Legislature and the approval of the Executive should only be held void as repugnant to the Constitution when the repugnancy is clearly demonstrated. Every intendment is in favor of the validity of statutes, but a written Constitution must be interpreted and given effect as the paramount law of the land, equally obligatory upon the Legislature as upon other departments of government;

and an act in evasion of the terms of the Constitution, as properly interpreted and understood, and frustrating its general and clearly expressed or necessarily implied purpose, is as clearly void as if in express terms forbidden. (*People ex rel. Bolton* v. *Albertson*, 55 N. Y. 50, 54, 55.)

It is a general provision that a man may waive any right that he has, whether secured to him by contract, conferred upon him by statute or guaranteed him by the Constitution. (*People ex rel. McLaughlin* v. *Police Commissioners*, 174 N. Y. 450, 456, citing *Embury* v. *Conner*, 3 id. 511; *Matter of N. Y., L. & W. R. R. Co.*, 98 id. 447; *Mayor, etc., of N. Y.* v. *Manhattan Railway Co.*, 143 id. 1.)

While the dictum in the *McLaughlin* case is very broad it was spoken in a civil action and all the cases cited were civil actions. It is obvious that this rule, or doctrine, has its limitations. It applies in a criminal case if the right given belongs to the accused alone and does not apply where it is given to the State or public as well. (*State* v. *Worden*, 46 Conn. 349, in which it was held that the right to trial by jury was for the accused alone.)

Cases where a constitutional right clearly could not be waived would probably include the provision that no person shall be incompetent to be a witness on account of his opinions on matters of religious belief; all provisions in regard to freedom of religion; that no person shall be twice put in jeopardy for the same offense. Neither can a party consent to be tried for a crime by any body or tribunal other than a court, nor by a court not constituted as required by law, or a jury not so constituted, or to be sentenced to any punishment not prescribed by law. It has even been held that he cannot waive the right to be present at the trial. (*Hopt* v. *Utah*, 110 U. S. 574, 579.) These are matters of public as well as private concern.

But he may under statutory regulation waive a constitutional right to trial by jury, he may consent to be a witness against himself, he may consent to have his property taken for public use without compensation, he may waive the Federal prohibition against unauthorized search and seizure and consent to be searched without cause and without warrant. He may waive the right to be represented by counsel and the right to be confronted with the witnesses against him. All these and many others are rights immediately affecting the individual in question and are not otherwise matters of public concern. They are for the protection and benefit of the individual alone and are not prohibitive in their nature.

In the instances mentioned the line of demarcation between provisions which can be waived and those which cannot, seems clear and distinct.

In regard to the right to have capital or otherwise infamous crimes prosecuted by indictment by a grand jury, the Constitution is prohibitive in its language. It does more than declare a right; it forbids that persons shall be held to answer for infamous crimes by any process except indictment. It is a prerequisite to the jurisdiction of the court to try a person for such an offense. The indictment is something to which the accused is not in the first instance directly a party. It would seem to be as essential to due process of law as it is that the court which is to try the charge shall be legally constituted.

Where the Constitution of a State or a statute authorized by the Constitution provides the mode in which certain offenses are to be prosecuted, such mode must be followed. (Joyce Indictments, § 13.) Congress clearly has not power to dispense with a grand jury in the punishment of crimes made infamous, although it has power to change the grade of a crime from that of an infamous one to a misdemeanor and thus dispense with the necessity of an indictment. (Id. § 34.)

" It has been decided that the Fifth Amendment to the United States Constitution applies to the territories and that a territorial Act providing for the prosecution by information of any offense embraced in such Amendment is in violation of the Constitution and void." (Id. § 40, citing *Territory of Arizona* v. *Blomberg*, 2 Ariz. 204.)

" Where by a State constitutional provision the right is secured to a person accused of certain crimes of an indictment by the grand jury, a proceeding against him in the manner specified is essential to confer jurisdiction upon the court, and jurisdiction in such a case cannot be acquired, by any act of consent or waiver on the part of an accused person, to try or to convict him of a crime of the character specified where he has not been proceeded against therefor by indictment." (Id. § 32.)

The fact that he pleads guilty or confesses his guilt confers no power on the court to sentence him and he can only be lawfully sentenced after he has been proceeded against in the manner prescribed in the Constitution. (Id.)

Perhaps the most important of the protections to personal liberty consists in the mode of trial which is secured to every person accused of crime. At the common law, accusations of felony were made in the form of an indictment by a grand jury; and this process is still retained in many of the States, while others have substituted in its stead an information filed by the prosecuting officer of a State or county. In the Federal courts under the Fifth Amendment to the Constitution of the United States and in the courts of those States whose Constitutions contain a similar

provision, no person can be held to answer for a capital or otherwise infamous crime, unless on presentment or indictment of a grand jury.

Prosecution by information is in derogation of the common law, and a departure from the general policy of our laws and statutes in derogation of the common law and in opposition to a long-settled policy, must be strictly construed. (*State* v. *Boswell*, 104 Ind. 541, 546, citing *U. S.* v. *Brady*, 3 Crim. L. Mag. 69, 77.)

" That mere rights and privileges guaranteed by the Constitution can be waived, to some extent at least, is probably true. But it would seem that constitutional requirements as to the mode and manner of instituting prosecutions involving the deprivation of life or liberty can not be dispensed with by the Legislature, nor waived by the accused, even with the consent of the Legislature." (*State* v. *Stimpson*, 78 Vt. 124, 129, citing Cooley Const. Lim. [6th ed.] 214 *et seq.*, and 390; *Cancemi* v. *People*, 18 N. Y. 128; *Hopt* v. *Utah*, 110 U. S. 574, 579.)

The Attorney-General cites a number of cases to the effect that prosecutions by information are within the power of States and do not violate the provision of the Federal Constitution that no person shall be deprived of life, liberty or property' without due process of law, and this contention is, of course, correct.

" Subject to the requirement of due process of law, the States are under no restriction as to their method of procedure in the administration of public justice. * * * In criminal cases due process of law is not denied by a State law which dispenses with a grand jury indictment and permits prosecution upon information, nor by a law which dispenses with the necessity of a jury of twelve, or unanimity in the verdict. Indeed the requirement of due process does not deprive a State of the power to dispense with jury trial altogether." (*Jordan* v. *Mass.*, 225 U. S. 167, 174, 176, citing *Hurtado* v. *Calif.*, 110 id. 516, and *Maxwell* v. *Dow*, 176 id. 581.) In the cases cited on that point, viz.: *Hurtado* v. *Calif.* (110 U. S. 516); *McNulty* v. *Calif.* (149 id. 645); *Bolln* v. *Nebraska* (176 id. 83); *State* v. *Boswell* (104 Ind. 541); *State* v. *Tucker* (36 Oreg. 291); *Rowan* v. *State* (30 Wis. 129), the decisions related to States wherein the Constitution either expressly permitted prosecution by information or there was no constitutional inhibition against such prosecution. I have not been referred to, and with one possible exception, have not been able to find the decision of any court which has held that the Legislature of a State having a constitutional provision like ours, which has literally or substantially re-enacted article V of amendments to the United States Constitution, has the power by legislative act or otherwise to provide for the

trial of persons accused of infamous crimes upon information or otherwise than by indictment by a grand jury.

The possible exception referred to is *Edwards* v. *State* (45 N. J. Law, 419). In that case the defendant (plaintiff in error), with three others, had been arrested on a charge of larceny of goods to the value of sixteen dollars. It was doubtless a mere misdemeanor, a case for a justice of the peace, but under a special provision applicable to Essex county, jurisdiction in cases of larceny of goods valued at less than twenty dollars was conferred on the Court of Quarter Sessions and there was a provision somewhat similar to the one in this State, by which the defendant could waive indictment and be tried immediately. The New Jersey Constitution at that time provided that "No person shall be held to answer for a criminal offense unless on the presentment or indictment of a grand jury, except * * * in cases cognizable by Justices of the Peace."

The defendant was tried under this statute, after filing the prescribed petition, without having been indicted. On appeal to the Court of Errors and Appeals this was held to be a valid conviction. The court did not point out wherein the legislative act or the procedure in regard to Edwards was in conflict with the constitutional prohibition, but evidently assumed that it was, and based its decision on the ground that the defendant had waived his right to be proceeded against by indictment, and that it could be waived.

After citing *State* v. *Worden* (46 Conn. 349), where the Supreme Court held that under a constitutional provision that the accused shall have a right to a speedy trial by an impartial jury and that the right of trial by jury shall remain inviolate, an act of the Legislature which provided that in all prosecutions the party accused, if he should elect, might be tried by the court without a jury, was constitutional, and other cases to the same effect, the court says: " We can see no force in the argument that the accused may waive a trial by a jury and not waive the other constitutional privilege of having the accusation against him first passed upon and found by a grand jury. If his waiver is effective in the one instance, it must be in the other. Both provisions are provisions made for the benefit of the accused, and both are subject to that fundamental rule of law that a person may renounce a provision made for his benefit, and to that maxim *quilibet potest renunciare juri pro se introducto,* which applies as well to constitutional law as to any other."

It seems to me that this reasoning loses much of its force in that it fails to recognize the true distinction between a prohibitory

provision of law and one that merely confers a right and places in the same class the right not to be tried unless first indicted which is mandatory and goes to the validity of the proceeding and the right to trial by jury, a right which is conferred in language not mandatory but permissive.

Although the opinion mentions the distinction between a constitutional provision which confers a right and one which is prohibitory in its form of expression, still it brushes the distinction aside as applied to indictments and trials by jury, by saying: " But, nevertheless, both these provisions are classified under the title of ' Rights and Privileges,' and among the rights and privileges enumerated in the Constitution."

Thus the court seemed to assume that what is designated as a right or privilege cannot also be joined with a mandatory limitation or inhibition against the infringement of that right.

In *Ex parte Bain* (121 U. S. 1, 11), a case arising under Federal laws, the court commenting on the origin and general purpose of the grand jury system, says: " In this country, from the popular character of our institutions, there has seldom been any contest between the government and the citizen which required the existence of the grand jury as a protection against oppressive action of the government.  Yet the institution was adopted in this country, and is continued from considerations similar to those which gave to it its chief value in England, and is designed as a means, not only of bringing to trial persons accused of public offenses upon just grounds, but also as a means of protecting the citizen against unfounded accusation, whether it comes from government, or be prompted by partisan passion or private enmity.  No person shall be required, according to the fundamental law of the country, except in the cases mentioned, to answer for any of the higher crimes unless this body, consisting of not less than sixteen nor more than twenty-three good and lawful men, selected from the body of the district, shall declare, upon careful deliberation, under the solemnity of an oath, that there is good reason for his accusation and trial."

The language of the Constitution is " positive and restrictive " that no person shall be held to answer for such a crime (infamous), " unless on presentment or indictment of a grand jury." (*Ex parte Bain, supra,* 6.)

" The Fifth Amendment to the Constitution, that no person shall be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment of a grand jury, provides for a requisite to jurisdiction " and a party cannot by consent confer jurisdiction.  (*Ex parte McClusky,* 40 Fed. 71, 74.)

" In this country the State and the law have such a great interest in the life and liberty of the citizen as to see to it that such life or liberty shall not be taken away, even with the consent of the citizen, in violation of one of the great constitutional fundamental requisites regulating the method to be adopted to deprive the citizen of his life or his liberty." (*Ex parte McClusky, supra*, 75.)

The general criterion by which the constitutionality of a State or National law, assailed as void, is to be tested, is succinctly set forth in Cooley on Constitutional Limitations (8th ed. 354, 355) as follows: " The government of the United States is one of enumerated powers; the governments of the States are possessed of all the general powers of legislation. When a law of Congress is assailed as void, we look in the National Constitution to see if the grant of specified powers is broad enough to embrace it; but when a State law is attacked on the same ground, it is presumably valid in any case, and this presumption is a conclusive one, unless in the Constitution of the United States or of the State we are able to discover that it is prohibited. We look in the Constitution of the United States for grants of legislative power, but in the Constitution of the State to ascertain if any limitations have been imposed."

Weighed in these scales and in the light of the authorities, section 222 of the Code of Criminal Procedure, to the extent that it permits any one, with or without his consent, to be held for a capital or otherwise infamous crime, except by the orderly and prescribed process of indictment, violates the letter and true meaning of both State and Federal Constitutions, and is null and void.

The writ must be sustained and the relator discharged from his imprisonment; but it appearing from the testimony offered with the return herein that he is or may be guilty of the offense charged against him and has been held by the police justice for the action of the grand jury of Broome county, and that said offense is bailable, the order shall provide that before his discharge the relator give bail, pursuant to section 1255 and in the manner prescribed in section 1264 of the Civil Practice Act, in the penal sum of $1,000 conditioned for his appearance to answer said charge in whatsoever court it may be prosecuted and to appear for arraignment if indicted and to render himself in judgment if convicted; and that he be imprisoned in the jail of Broome county until such bail be given, unless at its next regular session the grand jury shall fail to indict him, in which case he shall then be discharged.

Order may be submitted.