Filed Oct. 9, 1884.

---

No. 11,935.

## Butler *v.* The State.

CRIMINAL LAW.—*Constitutional Law.*—*Right to Impose Terms Where Accused Asks to Take Depositions in a Foreign Jurisdiction.*—The Legislature has power to impose terms upon a person accused of crime, who asks and receives the privilege of taking depositions of witnesses in a foreign jurisdiction, and a statute which provides that the accused may take testimony by depositions in a foreign jurisdiction is not unconstitutional because it requires that the defendant shall enter of record his consent that the prosecution may also take the depositions of witnesses residing out of the State.

SAME.—*Federal Constitution.*—*In What Cases its Provisions Apply to State Prosecutions.*—The general rule is that the provisions of the National Con-

Butler *v.* The State.

stitution do not apply to the procedure by the State in prosecutions for offences against its laws, but when the constitutional provision names the States it is otherwise. As the States are not named in the section which provides that a person accused of crime shall "be confronted with the witnesses against him," its provisions do not control the question of the power of the State Legislature to enact a statute granting an accused a right to take depositions upon condition that he consent to the exercise of a similar right by the prosecution.

SAME.— *Waiver of Constitutional Privilege.*— *Witnesses.*—A defendant in a criminal prosecution may waive the benefit of the constitutional privilege of being confronted by the witnesses.

SAME.— *What Constitutes.*— *Depositions.*—Where the defendant accepts a right to take depositions in a foreign jurisdiction under a statute requiring him to concede a like privilege to the State, he waives the constitutional privilege of being confronted by the witnesses against him.

SAME.— *Withdrawal of Consent.*—After the defendant has acted upon the order of the court, and taken depositions under it, he can not withdraw his consent.

SAME.— *Practice.*— *Right to Limit Number of Witnesses.*—Within reasonable limits, the trial court has a right to limit the number of witnesses that may be called, and if there is no abuse of discretion the appellate court will not interfere.

SAME.— *When Evidence Must be in Record.*—When it is necessary that all the evidence should be in the record in order to show that a ruling complained of injured the appellant, there can be no reversal in the absence of the evidence from the record.

SAME.— *Jurors, Statements of.*—The statements of a juror in answer to questions touching his competency are to be taken together, and his competency is not to be determined from mere isolated and detached statements.

SAME.— *Competency of Jurors.*—A juror is not necessarily incompetent because in answer to a question he discloses the fact that he has an erroneous view of the law governing the defence of insanity, but also discloses in his answers a willingness and an ability to yield readily to the law as it exists.

SAME.— *Juror's Opinion of Feigned Defence of Insanity.*—A juror is not necessarily disqualified because he expresses an opinion that the defence of insanity should be carefully scrutinized, and also expresses himself as strongly opposed to feigned defences of that character, but states further that he is not prejudiced against genuine defences of that character.

SAME.— *Juror's Opinion Founded on Rumors and Newspaper Reports.*—As a general rule opinions founded on newspaper reports and rumors do not disqualify.

From the Whitley Circuit Court.

*C. H. Blackburn*, *H. I. Booth* and *T. E. Powell*, for appellant.

*F. T. Hord*, Attorney General, *M. A. Sickafoose*, Prosecuting Attorney, and *W. B. Hord*, for the State.

ELLIOTT, C. J.—The appellant was convicted of the crime of murder in the first degree and sentenced to death. The judgment on the verdict was pronounced on the 14th day of June, 1884, the transcript was certified by the clerk to the appellant on the 27th day of September, and filed in this court on the 6th day of the present month. We have dispensed with all formalities in the matter of preparing the record, and have given the appellant full hearing upon all the questions presented by the record and argued by counsel.

The evidence is not in the record, and we can not, therefore, consider any questions which require for their just comprehension and decision an examination of the evidence. This rule has always prevailed in this State and has been many times enforced.

Our statute enacts that we shall not reverse a judgment in a criminal case except for errors prejudicing the substantial rights of the appellant. R. S. 1881, section 1891. It is a familiar rule that all reasonable presumptions are indulged in favor of the rulings of the trial court, and that on appeal the appellant must affirmatively show that errors were committed prejudicial to his rights, and where the evidence is necessary to make it appear that the substantial rights of the defendant were prejudiced, it must be in the record.

The record shows that the appellant applied to the court for leave to take depositions in the State of Ohio; that the court ordered that leave be granted to take the depositions of forty-five witnesses at Columbus, Crestline and Cincinnati, upon condition that the appellant enter his consent that the prosecution might also take depositions out of the State relative to the same matter. This consent was entered of record. It is contended that the court had no right to exact

the consent of the appellant, and that section 1805 of the statute, which reads thus: "The defendant may, by leave of court, take the depositions of witnesses residing out of the State, to be read on the trial; but, before leave is given, the defendant must enter of record his consent that the depositions of witnesses residing out of the State may be taken and read on behalf of the State, relative to the same matter; and the defendant may, on the same terms, and by leave of court, or by notice to the prosecuting attorney, take the deposition of any witness conditionally," is unconstitutional and void.

The argument is that the statutory provision is in conflict with that section of the Constitution of the State, which declares that one accused of crime shall "have the right * * to meet the witnesses face to face; and to have compulsory process for obtaining witnesses in his favor." Const., art. 1, section 13.

The statute under examination confers upon an accused person a right he did not have at common law, namely, the right to take depositions in a foreign jurisdiction, and confers it upon condition that he shall concede a like privilege to the State. No right is taken from him, but an additional one is granted him. It seems clear to our minds that a statute conferring a new and beneficial privilege upon a defendant can not be deemed unconstitutional because it annexes to the grant a condition favorable to the State, but just in itself and not oppressive to the accused. The right stands as it is given by the statute, and that is a right to exercise the privilege conferred upon the condition that a like privilege be conceded to the State. No restraint is imposed upon the accused; it is left to his free, unfettered choice; he may accept the offered privilege, or he may not, just as he wills. But if he does accept it, he must take it as the statute gives it. The right conferred by the statute is a single, indivisible one; the condition is an integral part of it, and if the accused accepts the benefit of the statute, he must take it just as it is given; he can not take it in part and reject it in part. In his accept-

ance of the new right, he takes solely by virtue of the statute, and necessarily takes the burden with the benefit. He can not create a right, he can only take what the law has created. We are of opinion that the statute does not contravene the provisions of the State Constitution.

We think it settled by the adjudged cases that the general rule is that provisions of the Federal Constitution do not govern trials of criminal offences committed against the laws of a State. *Twitchell* v. *Com.*, 7 Wall. 321 ; *Barron* v. *Baltimore*, 7 Peters, 243 ; *Baker* v. *Gordon*, 23 Ind. 204 ; Cooley Const. Lim. (5th ed.) 26. The provisions of the Federal Constitution, touching the rights here involved, do not name the States, as is done in the provisions discussed in *Kring* v. *Missouri*, 107 U. S. 221, and *Tennessee* v. *Davis*, 100 U. S. 257 ; and where the States are not named, the provisions of that instrument do not control their legislation. But, conceding that the section of the National Constitution does control procedure in the State courts, it is substantially the same as that of the Constitution of the State, and what we have said in discussing the provisions of our Constitution disposes of the argument that our statute is in conflict with the Federal Constitution. There is, we may add, more reason for refusing to hold that the Constitution does not apply to such a case as this, than there is for holding that the statements of deceased witnesses, and dying declarations, are competent evidence, notwithstanding the constitutional provision, and yet on those questions the law is firmly settled. Cooley Const. Lim. 389, auth. n. It has been held by the highest court of the land, that this constitutional provision can not be successfully invoked by one who has fraudulently procured the absence of the witness, and surely the case of one who, to secure a statutory right, solemnly enters his consent of record that the State may also take depositions, stands upon the same general principle. *Reynolds* v. *U. S.*, 98 U. S. 145. To permit him to repudiate his solemn act, done in open court,

and made part of the record, would be to permit him to take advantage of his own wrong.

If, however, the accused did have a constitutional right to confront the witnesses, still there is no cause for reversal, because that right was waived. Our decisions have steadily maintained the power of a defendant to waive a constitutional provision intended for his benefit. A striking application of the doctrine was made in the case of *Veatch* v. *State,* 60 Ind. 291. In that case the appellant had been tried on an indictment charging murder, and was convicted of manslaughter, but afterwards obtained a new trial. In the course of the opinion it was said : " The theory of the appellant is, that the former verdict, which was for manslaughter only, operated as an acquittal of murder in either of its degrees ; and that, upon a subsequent trial, he could not be convicted of murder in either degree. The Constitution, it is true, provides, that ' No person shall be put in jeopardy twice for the same offence.' But there are many cases in which this constitutional provision is deemed to have been waived. Thus, if one is convicted of an offence, and obtains a new trial, either in the court in which the case is tried, or on appeal or writ of error, he is deemed to have waived the constitutional provision, and may, of course, be put upon trial the second time for the same offence, and so on as often as he obtains a new trial. The statute regulating criminal pleading and practice provides, that ' The granting of a new trial places the parties in the same position as if no trial had been had ; the former verdict can not be used or referred to, either in the evidence or argument.' * * Now, it would seem, that, if a party takes a new trial in a criminal case, he takes it on the terms prescribed by the statute, and consents to be placed ' in the same position as if no trial had been had.' " The principle laid down is that which rules this case, and it is in accordance with many decisions of our court. *McCorkle* v. *State,* 14 Ind. 39 ; *Morgan* v. *State,* 13 Ind. 215 ; *Sanders* v. *State,* 85 Ind. 318 (44 Am. R. 29), see op. 332 ; *Turner* v. *Wilson,* 49 Ind.

581, vide opinion, p. 585; Behler v. State, 22 Ind. 345; Boggs v. State, 8 Ind. 463.

The text-writers approve the rule and declare it to be applicable to such cases as the present. Mr. Bishop, in speaking of the constitutional provision, says: "A party, who can waive most rights, may under various circumstances waive this one, and by consent submit to evidence by depositions, and to other testimony not delivered orally at the trial." 1 Crim. Proced., sec. 1205. The same doctrine is laid down in Weeks on Depositions, 565, 566. Many well considered cases give full support to this doctrine. State v. Worden, 46 Conn. 349; S. C., 1 Crim. L. Mag. 178; Sahlinger v. People, 102 Ill. 241; State v. O'Connor, 65 Mo. 374; S. C., 27 Am. R. 291; State v. Polson, 29 Iowa, 133. A strong and well reasoned case, fully in point, is that of United States v. Sacramento, 2 Mont. 239; S. C., 25 Am. R. 742. We think that the case of People v. Murray, 5 Crim. L. Mag. 223, supports this view. If the right to object to the depositions offered in evidence in that case was one which the defendant could not waive, then he undoubtedly might make his objection at any time before the case was finally disposed of on appeal. To say that it is an objection which could not be waived, and yet was waived, is to assert two contradictory propositions. It involves a palpable contradiction to affirm that a right can not be waived, and yet was waived. The fair interpretation of the language of that decision is that the right to be confronted with witnesses is one which may be waived and which consent did waive.

That the construction of the Constitution and the rule contended for by appellant can not be correct, an illustration will prove. The section of the Constitution relied on by counsel provides that the accused shall have a right " to a public trial * * in the county in which the offence shall have been committed," and our statute gives a change of venue. Would it be seriously pretended that if the accused avails himself of the provisions of this statute, and secures a change of

Butler v. The State.

venue, he can, after trial, insist that the statute is uncon-
stitutional?

The case in hand is stronger than any of those cited, for
here the appellant asked and received the benefit of a new
right expressly created by statute. He really obtained, as
we have seen, a purely statutory right, and an essential part
of that right is the consent that the State may also take and
use depositions. It was this statutory right for which he
asked and he could only receive the right as the statute cre-
ated it, and having received what he sought, and all he sought,
he can not demand the overthrow of the statute which cre-
ated the right.

For more than thirty years the statutory provision under
discussion has been acted on by the Legislature, the courts
and the people of this State, and we see no just reason for
now overturning it.

It is true that we have held that a jury of less than twelve
can not lawfully be empanelled, and that the consent of the
defendant will not waive his right to object that a jury of less
than twelve is not a lawful one. But the principle which sup-
ports these decisions is different from that which rules here.
A jury is a part of the court, and courts can only be consti-
tuted as the Constitution requires. The jury is important to
the public as well as to the defendant, for the object of the
Constitution is to bring into court men from the body of the
people to assist in the administration of the law. Questions
respecting the composition of a jury are, in their nature, jur-
isdictional, just as are questions respecting the composition
and existence of courts. Here the right is in the nature of
a privilege which only concerns the individual defendant, and
bears only upon the procedure on the trial. State v. Worden,
46 Conn. 349; S. C., 1 Crim. L. Mag. 178. Questions as to the
composition of the jury affect the tribunal itself; while ques-
tions such as this affect only the individual, and the method
of procedure. In the cases upon the subject of waiving a full

jury, there was no question of legislative power involved, for there is no statute authorizing it, and here there is a statute authorizing a waiver.   The question here is whether the Legislature has power to authorize the accused to waive a constitutional privilege.   No one doubts that our statute, providing that in felonies not capital a jury trial may be waived, is valid, and yet in the same section of the Constitution relied on by the appellant it is written, " the accused shall have the right to a public trial by an impartial jury."   The statute to which we refer has stood unchallenged for nearly half a century, and many convictions have been sustained under it, and this long acquiescence by all the branches of the government, and by the people, affords some assistance in construing the constitutional provision.   It is not difficult to perceive the radical difference between the two classes of cases, and there is no reason for departing from a long settled practice.

The court has a discretion as to the number of witnesses that may be called.   This rule is recognized in the case of *Gardner* v. *State,* 4 Ind. 632.   If the court had no discretion in such cases, then the case might be indefinitely delayed, and an unlimited number of witnesses called.   But for this rule courts would be subject to the caprice of counsel, and public good would seriously suffer.   We agree that this discretion should be so exercised as not to impair the rights of a defendant, nevertheless it does exist.   But as the power is a discretionary one, an appellate court can only interfere where it has been abused.   If we can say from the record that the discretion has been abused, then we should review the ruling and reverse the judgment. This we can not say, for the number of witnesses was limited to forty-five, and this, in itself, was not an unreasonable limitation.   There are no facts in the record showing it to be unreasonable, for, as we have seen, the evidence is not here.   Under the rules stated in the introductory part of this opinion, we must presume in favor of the just exercise of this discretion, and must also presume

that nothing was done that worked prejudice to any of the substantial rights of the appellant.

After the appellant had asked, accepted, and acted upon the order of the court, he' could not withdraw his consent. As said by COOLEY, J., in *People* v. *Murray, supra,* he could not play fast and loose with the court. If he had declined to take depositions under the order granted him at his request, a different case would have been presented, but this he did not do; on the contrary, he availed himself of the right awarded him under the statute, and, having received the full benefit of it, yet asks that the statute be struck down. He makes this demand without having withdrawn, or offered to withdraw, the depositions taken by him. He demands the benefit but seeks to escape the burden. It would be unjust to permit him to succeed; he asks that which is neither equitable nor just, and we deny his demand.

We can not know, in the absence of the evidence, that the rulings of which he complains did him injury; for anything that appears, the depositions taken, as they must have been, as entireties, may have done him no harm. We can not, in view of the rules heretofore adverted to, presume that they did do him an injury. But we do not press this consideration, for the rulings of the trial court commend themselves to our minds as eminently proper.

The remaining question arises on the ruling of the court upon the challenges of jurors for cause interposed by the appellant. It is a principle of law running through all of its various branches, that all of the declarations of a witness, or a party, must be taken together. The statements of a speaker and the writings of an author are to be judged, not from detached sentences, but from all that is said or written upon the same subject. This is, indeed, a principle of interpretation prevailing in logic, rhetoric, ethics and philosophy. It would be illogical and unjust to act upon disjointed parts of a statement. Under this rule the statements of jurors fall. All that a juror says upon a subject is to be taken, and from all

his statements his competency must be determined. Taking into consideration all the statements of the juror whose examination makes the strongest case for the appellant, we think that it does not appear that the trial court erred in allowing him to sit in the case. It appears that with the appellant he had no personal acquaintance, and that he had never seen him until he saw him at the bar of the court; that all he, the juror, knew of the case he had learned from newspapers and rumors. It is true that the examination of the juror showed that he had a mistaken view of the law applicable to the defence of insanity, but it is also true that he disclosed a willingness and an ability to yield readily to the law as it exists. More than this, it appears that his opinions were adverse, not to genuine defences of insanity, but to feigned defences of that character. That a man is inclined to view the defence of insanity with scrutinizing caution is no objection to his competency, for it is well settled that it is proper for the court to instruct the jury to scrutinize the defence with care. Speaking of an instruction of this tenor, it was said in *Sawyer* v. *State*, 35 Ind. 80: "The observations of the court in that respect meet our unqualified approval." *Goodwin* v. *State*, 96 Ind. 550; *Guiteau's Case*, 3 Crim. L. Mag. 347, Wharton's notes. That the juror expressed himself as impressed unfavorably, and strongly so, by what he had heard and read of the crime is true, but it is also true that he affirmed that this impression would yield to the evidence and the law. We suppose most men are moved by a narrative of a crime, but this of itself does not necessarily render them incapable of justly weighing the evidence and properly applying the law. *Elliott* v. *State*, 73 Ind. 10. In the case cited it was said: "A juror's opinion of the morality of a particular transaction certainly can not be considered in determining his competency *to try one* accused thereof. If so, jurors could not be found to try those charged with murder, arson, rape, or any of the crimes which are *mala in se.* All good men, and most bad men, are prejudiced against such acts, and

deem them improper and immoral." The subject we are dis-
cussing received careful consideration and was elaborately
discussed in *Stout* v. *State,* 90 Ind. 1, and it was said, as we
may say here: "At all events the facts presented by the an-
swers of each one of these persons raised a question for the
decision of the court in connection with the general appear-
ance and the demeanor of the proposed jurors, and concerning
which the provision, quoted as above, confers a judicial discre-
tion, and there is nothing disclosed from which we can infer
any abuse in this case of the discretion thus conferred."

We have given the appellant the benefit of the most favor-
able construction of the record possible, and have given to
the able arguments of his learned and zealous counsel all
the care and consideration that we could command, but we
can find no error that will warrant a reversal, and we must,
therefore, affirm the judgment.

