STATE OF IOWA V. GEORGE BEABOUT, Appellant.

**Rape:** .WHEN ASSAULT AND BATTERY NOT INCLUDED: *Charge.* Where the only question contested on a trial for rape was as to the consent of the prosecutrix to the act of intercourse, it is unnecessary to instruct the jury, that the crime charged includes the offense of assault and battery; for there should be no conviction for assault and battery if the crime is clearly rape, nor where intercourse is had upon consent.

INSTRUCTION ON CONSENT: *Construed toge/her.* An instruction on a trial for rape, that if the jury find that the prosecutrix did not consent to the act of intercourse, directly or by inference, they will be justified in finding that it was by force, while not to be approved, may not constitute prejudicial error, when considered with the other instructions.

LIMITING WITNESSES ON IMPEACHMENT: *Discretion.* A court may in its discretion, limit the number of witnesses, both as to good and bad reputation of a witness sought to be impeached, to five, and this, though part of the five is supplied by reading as evidence, what a motion for continuance states absent witnesses would testify to if present.

CROSS-EXAMINATION. Where defendant said he "went to have some sport with the girls," he may be asked, on cross-examination, whether he meant sexual intercourse by such expression, and whether he did not know that such intercourse was a crime.

*Appeal from Taylor District Court.*— HON. H. M. TOWNER, Judge.

THURSDAY, DECEMBER 10, 1896.

THE defendant was indicted, tried and convicted of the crime of rape, committed upon the person of Myrtle Bristow, and he appealed from the sentence and judgment of the district court.—*Affirmed.*

*L. T. McCoun* and *J. R. McCoun* for appellant.

*Milton Remley*, attorney general, and *Jesse A. Miller* for the state.

ROTHROCK, C. J.—The crime with which defendant was charged, was alleged to have been committed on the thirtieth day of September, 1895. The defendant is a married man, and at the time of the trial he was twenty-eight years of age, and engaged in keeping a drug store, at Hopkins, a village in the state of Missouri, near the Iowa state line, and about ten miles from Bedford, the county seat of Taylor county, in this state. The complaining witness, Myrtle Bristow, arrived at the age of fifteen years, on the twenty-fourth day of November, 1895, some two months after the crime, if any, was committed. It does not appear that she was abnormally developed, physically. On the contrary, some of the witnesses in the case spoke of her and companion, of about the same age, who was with her when the alleged crime was committed, as little girls. It appears that she and her companion, who was named Edith Corwin, were schoolmates. On the morning of September 30, 1895, they went to school, and the teacher or superintendent of the school suspended them from further attendance, for what was thought to be improper conduct, tending to demoralize the morals of the school. Immediately upon being suspended they left the town, and walked to Bedford, a distance of ten miles. They did not return to their homes, and their families, on making inquiry about them, learned that they were at Bedford, and an arrangement was made to have them brought home. The defendant, and one Lewis, learned that the girls were at Bedford, and they procured a single-seated buggy, and drove to that place, and ascertained that the girls had, through directions from their

families, been found by the marshal of Bedford; and they were being kept by him, awaiting some one who, they were advised, would come from Hopkins to take them home. The defendant appeared at the place where the girls were at about 10 o'clock that night, and represented that he had come after the children to take them home. After some parley with the marshal, he consented to let the defendant take them to Hopkins. The marshal required him to bring the buggy where the girls were, and they started on their way. The defendant assured the marshal that he was all right, a married man, and that he ran a drug store in Hopkins. When they had driven about two blocks south and a block west they found Ewing in waiting. He got into the buggy, and they left the town, on the way to their homes. While on the way, they stopped, and got out of the buggy; and Beabout had sexual intercourse with the prosecuting witness, and Ewing with Edith Corwin. There is no conflict in the evidence as to the fact of sexual intercourse. The four parties to the acts were all examined as witnesses on the trial. They differed as to disgusting details, and their testimony will not be repeated here. Beabout and both the girls testified that they stopped and got out of the buggy twice on the way. Ewing appeared to have remembered of but one stop. The prosecuting witness testified that the first time Ewing attempted to have intercourse with her, and that she successfully resisted him, and that during that time Beabout had intercourse with Edith Corwin, and that at the second halt in the journey the defendant dragged her out of the buggy, and, notwithstanding her resistance, he overpowered her and accomplished his purpose. The party arrived at Hopkins at about two o'clock in the morning. The girls were let out of the buggy some distance from their homes. Myrtle went to her home, and it was at once discovered that

something unusual had happened. Her undercloth-
ing was bloody. She was greatly excited, and cried,
and, after some hours, told her mother that she had
been ravished by Beabout.

We have thus far stated facts which are prac-
tically undisputed, except as to the manner in which
the two men gratified their desires. They testified in the
most positive terms that there was no force used, but
that the girls were willing and anxious to have sexual
intercourse with them. On the other l and, if the tes-
timony of the girls is to be believed, both of the men
were guilty of the crime charged in the indictment,
and the attending circumstances were of the most
brutal and revolting character.

The main contention of counsel for appellant is
that the verdict was against the evidence, and that a
new trial should have been granted for that reason.
Much of the argument in behalf of appellant is
devoted to review and analysis of the testimony of
the witnesses, and counsel for the state, following the
same lines, discuss the questions, and claim that the
evidence of guilt is absolutely conclusive. It is not
our practice to review the evidence in detail. After
carefully examining the whole record, we think the
verdict is not only supported by sufficient evidence,
but that any other result than a verdict of guilty
ought not to have been expected. It is true that the
general reputation of the prosecutrix and her com-
panion for chastity and moral character was attacked,
and witnesses testified to facts which indicated
they were wayward children; but witnesses on
the part of the state testified otherwise, and that
question was fairly submitted to the jury. There are
some features of the case that, in our opinion, fully
sustain the testimony of the two girls. One most
important fact is the condition of the prosecuting
witness when she arrived at her home. Her clothing

and all her acts and demeanor showed unmistakably that she had been outrageously abused; and a most controlling consideration is that, about forty-eight hours after the affair occurred, two respectable physicians made a physical examination of the prosecuting witness, and the jury were fully warranted in finding from their testimony that the sexual intercourse with defendant was the first time she was ever engaged in that act. If the jury found that the physicians testified truthfully, they might well conclude that, while she was in some respects a wayward girl, she had not surrendered her person to the lust of any man. We will not set out the testimony of the physicians.

II. It is urged that the court erred in overruling an objection to a question asked the defendant on cross-examination, as to whether he went to Bedford for the purpose of having intercourse with the girls. The objection was not well taken. The witness had stated in his examination that he went to Bedford "to have some sport with the girls." It was strictly proper to ask him whether he meant by that expression that his intention was to have intercourse with them. It was also fairly within the line of cross-examination to ask him if he did not know that such intercourse would be a crime. Other objections were made to questions asked the defendant on cross-examination, which we do not think demand special mention. They are of no more consequence than those above considered.

III. There were witnesses called by the state and the defendant for the purpose of impeaching and sustaining the character of other witnesses. It appears that the court made a ruling limiting the number to five impeaching witnesses in behalf of each party. The defendant, in a motion for a continuance, had set out facts which it was claimed witnesses would testify to if present. The state

admitted that the witnesses would so testify if pro-
duced, and the motion to continue the cause was over-
ruled. That part of the motion which set out the
evidence of the absent witnesses was read to the jury,
as testimony to be considered the same as if the wit-
nesses had been present, and testified in the presence
of the jury. The testimony of other impeaching wit-
nesses was introduced by the defendant, and, after the
testimony of more than five was introduced, the state
asked that the rule be enforced, and objected to
further testimony on that point, and the objection
was sustained. The defendant excepted to the ruling,
and asked to introduce the depositions of two other
witnesses. This ruling of the court is claimed to be
erroneous. The power of the court to limit the num-
ber of witnesses upon a given point is not an open
question in this state. In *Bays v. Herring*, 51 Iowa,
286 (1 N. W. Rep. 558), and *Bays v. Hunt*, 60 Iowa,
251 (14 N. W. Rep. 785), this court sustained such a
rule as applicable to general impeaching testimony.
The enforcement of such a rule is within the discre-
tion of the district court and we discover no reason
for holding that the discretion was abused.

IV. It is contended that the last part of the eighth
paragraph of the charge of the court to the jury is
erroneous. It is in these words: "If, in the case at
bar, you find that defendant had sexual inter-
course with the prosecuting witness, Myrtle
Bristow, at the time and place mentioned in the
indictment, and that the said Myrtle Bristow did not
consent to such intercourse, directly or by inference,
then you would be justified in finding such intercourse
was by force, within the meaning of the law." It is
said that this part of the charge of the court is errone-
ous, because its tendency was to lead the jury to believe
that the burden of proof was on the defendant to show
that the prosecutrix consented to the intercourse. The

case of *State v. Philpot*, 97 Iowa, 365 (66 N. W. Rep. 731), is cited as sustaining the proposition that the instruction is erroneous. An examination of that case will show that the judgment was reversed, but not on the ground that the instruction, when taken in connection with the whole charge, was erroneous. It is true that the part of the instruction objected to was in the same language in both cases; and this court, in *Philpot's Case*, said: "We refer to it in order that we may not, by silence, seemingly approve the charge, as being a correct abstract proposition of the law." Without setting out the other parts of the instructions, it is sufficient to say that while it is true the use of the words "did not consent to such intercourse, directly or by inference," do not of themselves express the thought that the state is required to prove the want of consent, yet, when considered with other parts of the charge, they are not open to any valid objection. The jury were instructed again and again, in the most positive terms, that the prosecution must show that the act was done by force, and against the will of the complaining witness.

V. It is urged that the county attorney, in the closing argument to the jury, was guilty of misconduct, by making inflammatory remarks, calculated to prejudice the jury against the defendant, and that he misstated testimony, and made assertions not warranted by the evidence, and that a new trial should have been awarded for that reason. Several pages of the abstract consist of what is claimed to be part of the argument objected to. It does not appear that any objection was made to the argument when it was made, and the record does not show that it was incorporated in the bill of exceptions. But, whether it was or not, we do not think that there was any such misconduct as to require a reversal of the judgment.

VI.    The court instructed the jury that the crime of rape included an assault with intent to commit a rape and a simple assault.    Counsel claim that the court erred in failing to instruct the jury that the crime charged included an assault and battery.    We do not think there was any reversible error in this omission in the charge.    It is not necessary to include the minor offenses in the instructions in all cases.    Where the evidence shows beyond question that if the defendant was guilty of the offense charged, if guilty at all, because the intercourse was by force and against the will of the prosecuting witness, the offense committed was rape.    If it was by consent of the parties to it, no assault or assault and battery was commited.    See *State v. Cole*, 63 Iowa, 695 (17 N. W. Rep. 183); *State v. Casford*, 76 Iowa, 330 (41 N. W. Rep. 32).

VII.    The defendant was sentenced to twenty years' imprisonment in the penitentiary.    It is insisted that the punishment is excessive.    It is provided by section 5160, McClain's Code, that a person guilty of the crime of rape "shall be punished by imprisonment in the penitentiary for life or any term of years."    A full consideration of all the evidence in the case impresses us with the thought that we ought not to disturb the judgment of the district court.

There are other questions presented by counsel for appellant, which we do not think demand special consideration.    The judgment of the district court is AFFIRMED.