## STATE v. MADISON.

The court did not err in refusing to permit the state's main witness in a prosecution for selling intoxicating liquors without a license to be cross-examined with reference to his possession of other bottles of whisky than that in issue claimed to have been purchased from defendant at the time stated in the information.

Where, in a prosecution for illegally selling liquor, the state's main witness testified that he received $50 for his services in procuring the bottle of whisky claimed to have been illegally sold, the court properly refused to permit questions on cross-examination to show that the witness was not working regularly, needed money to support his family, and had applied for county aid.

A question asked of a witness for the state on cross-examination as to whether he had not been a liberal patron and lounger around the saloons and cardrooms in the city for several years was properly excluded.

Where a county auditor had testified that no license had been issued to accused authorizing him to sell liquors in the city of G. during the year in which the liquor in question was claimed to have been sold by him, evidence as to defendant's payment for a license was immaterial, in the absence of any offer to show that a license had in fact been issued authorizing him to sell in G., and had been accidentally lost or destroyed.

Where a witness testified that they were acquainted with the reputation of accused in the vicinity in which he lived, and that it was bad, they thereby stated in effect that which constituted defendant's general reputation; and hence the evidence was not inadmissible because the questions did not call for the "general" reputation of accused.

Impeachment of a witness being a collateral issue, the court did not err in limiting the number to four on a side.

In a prosecution for selling intoxicating liquor without a license, accused having testified on cross-examination that he had once pleaded guilty to keeping open after hours, his explanation thereof that it was the offense of the bartender committed during his absence from town was immaterial and inadmissible.

Where intoxicating liquors are kept in a dwelling house and sales are made therein, it may properly be regarded as a shop or place of public resort within Laws 1907, p. 363, c. 173, § 8, providing that no warrant shall be issued to search a private residence occupied as such unless it or some part of it is used as a store, shop, hotel, or boarding house, or unless such residence is a place of public resort.

Intoxicating liquors found in defendant's dwelling house pursuant to an illegal search and seizure were nevertheless admissible in evidence against him in a prosecution for selling liquor without a license.

Where it was not disputed in a prosecution for selling liquor without a license that the liquor introduced in evidence was found pursuant to a search and seizure in defendant's dwelling house, and the testimony of the county auditor that no license had been issued to defndant authorizing him to sell in G. during the year in controversy, an instruction that it was undisputed that on the day of the alleged sale defendant had in his possession at his residence in G. a quantity of intoxicating liquors, and that the undisputed evidence also showed that defendant during January, 1908, did not have a license to sell liquors at retail in G., was not objectionable as a charge on the facts in violation of Code Civ. Proc. § 256, providing that the court shall only instruct the jury as to the law of the case.

An instruction that one of the methods for impeaching a witness is by calling others to testify that they are acquainted with the reputation of the witness sought to be impeached for truth and veracity in the neighborhood where he resides, and that such reputation is bad was not prejudicially erroneous for failure to limit such evidence to "general" reputation under Code Cr. Proc. § 500, providing that the Supreme Court shall give judgment without regard to technical errors not affecting the parties' substantial rights.

(Opinion filed, Sept. 3, 1909.)

Appeal from Circuit Court, Brown County. Hon. J. H. McCoy, Judge.

G. C. Madison was convicted of selling intoxicating liquors without a license, and he appeals. Affirmed.

*Crofoot & Harkin,* for appellant. *S. W. Clark, Atty. Gen., Cloyd D. Sterling, Asst. Atty. Gen.,* and *L. T. Van Slyke, State's Atty.,* for the State.

CORSON, J. Upon an information duly filed by the state's attorney of Brown county, the defendant was tried and convicted

of the offense of selling intoxicating liquors at the city of Groton, in said county, without a license. From the judgment the defendant has appealed to this court, and assigns numerous errors, the more important of which will be noticed in the course of this opinion.

James O'Day, a witness on the part of the state, after testifying that he had purchased of the defendant a certain quantity of whisky in the city of Groton, and having produced in court a bottle of whisky which he claimed was the identical bottle that he purchased of the defendant, and having testified on cross-examination that he had been promised and did receive $50 for procuring said bottle of whisky, known as "Exhibit 4," was on cross-examination asked: "Q. Now, Mr. O'Day, is it not a fact that on Sunday, the Sunday before the 21st, you sent down to James for a couple of bottles of pure whisky? A. Yes, sir." Thereupon the state's attorney objected to the question as not proper cross-examination, and made a motion to strike out the answer, which was sustained by the court, and the answer stricken out. "Q. Did you have any other bottle of whisky in your possession except Exhibit 4 on the 1st day of January, 1908?" This question was also objected to by the state's attorney as immaterial and not proper cross-examination, the objection sustained, and the defendant duly excepted. We are inclined to take the view that the court committed no error in excluding these questions. It was, as contended by the Attorney General, clearly immaterial whether or not the witness had other bottles of whisky in his possession; the only material issue being the purchase of whisky from the defendant at or about the time stated in the information. The matter of cross-examination of a witness is very largely in the discretion of the trial court, and its rulings will not be reversed unless there has been an abuse of such discretion, and no such abuse is shown by the record in this case. State v. Bunker, 7 S. D. 639, 65 N. W. 33; Homestake Mining Co. v. Fullerton, 69 Fed. 923, 16 C. C. A. 545; 1 Thompson on Trials, § 418.

It is further assigned as error that the court erred in excluding questions on the cross-examination of the witness O'Day, the object and aim of which was to bring out the fact that the witness

was not regularly working, and needed money for the support of his family, and had, in fact, applied for county aid for them. We are of the opinion that the court committed no error in excluding these questions. The witness had testified, as we have seen, that he received $50 for his services in procuring the bottle of whisky claimed to have been purchased by him. It was not necessary to press this inquiry further, as his interest in the prosecution was clearly shown to the jury; and the fact that he was in indigent circumstances and needed assistance was clearly immaterial. The evidence sought to be obtained did not affect his credibility as a witness, and was entirely immaterial to any issue in the case. Thompson in his work on Trials (section 168) says: "Within the rule of the preceding text questions which might excite prejudice against the witness, but the answers to which would not properly affect his credibility, are not allowed to be put on cross-examination." The evidence sought to be elicited by the questions propounded to the witness, especially by the question, "Have you not been a liberal patron and lounger around the saloons and cardrooms in the city of Groton for the past several years?" was clearly for the purpose of creating in the minds of the jury a prejudice against the witness, and was properly excluded.

In the course of the trial the county auditor was introduced as a witness on the part of the state, and testified that he had examined the records of Brown county, and that no license had been issued to the defendant authorizing him to sell intoxicating liquors within the city of Groton during the year in which the liquor was claimed to have been purchased by O'Day. On cross-examination he testified: "The record which I have in my hand is the receipt book from which the receipts for licenses are made. This is the only memorandum that we have as to the payment of licenses." The witness was then asked the following question: "I call your attention to stub 109, and ask you if that is the stub of a receipt for license paid by Mr. Madison for the year you referred to. A. Yes, sir." Thereupon the defendant's counsel propounded the following question to the witness: "Is it not a fact that none of the receipts or stubs on that book show the place where the business is carried on?" This question was objected to as not proper

cross-examination, and the court sustained the objection. There-
upon the defendant's counsel offered the book in evidence as part
of the cross-examination, the said book being a blank book of re-
ceipts for licenses from which the recipt is detached, and the rec-
ord thereto kept on stubs, to which offer the state's attorney ob-
jected, and the court sustained the objection ,to which the defend-
ant excepted. It is contended by the appellant that, inasmuch as
there appeared to be a stub of a license issued to the defendant,
they had the right to introduce the book in evidence, which in-
cluded that stub, but we are of the opinion that the court was
right in excluding the book, for the reason that the stub did not
show at what place the defendant was authorized to sell liquors,
and was therefore immaterial in the absence of any offer on the
part of the defendant to show that a license had in fact been is-
sued, authorizing the defendant to sell intoxicating liquors in the
city of Groton, and had been accidentally lost or destroyed. Evi-
dence immaterial when offered is inadmissible, unless accompanied
by an offer to show its materiality by other evidence.

On the trial the defendant sought to impeach the witness
O'Day, and the state sought to impeach the defendant's testimony
by evidence proving or tending to prove that their reputation for
truth and veracity was bad. It is contended by the defendant, that
the evidence tending to sustain the reputation of O'Day and to im-
peach the reputation of the defendant was inadmissible for the rea-
son that in the questions propounded by the state's attorney the
word "general" was omitted. It is contended by the defendant
that by allowing the questions to be put in the form in which they
were objected to, and allowing the answers thereto to stand, the
state was allowed to prove the reputation of the defendant as to
truth and veracity within a small class of people, and not his gen-
eral reputation, and without first compelling the witness to swear
that he knew the general reputation of the defendant for truth and
veracity. While it is proper in questions of this nature to ask the
witness if he knows the general reputation of the witness whose
testimony is sought to be impeached, yet the mere omission of the
word "general" will not affect the testimony of the witness, pro-
vided it is shown by the questions and answers that he, in fact,

does know the general reputation of the witness, and words meaning the same thing are used, when the witness is asked if he is acquainted with the reputation of the witness for truth and veracity in the vicinity in which he lives. In Dance v. McBride, 43 Iowa, 624, Adams, J., speaking for the court, says: "A man's reputation for veracity is what is said of him in the community in which he lives." 1 Thompson on Trials, § 529, says: "What is wanted is the common opinion, that in which there is general concurrence." When the witnesses therefore testified that they were acquainted with the reputation of the party in question in the vicinity in which he lived, they were stating in effect that which constitutes general reputation or character.

It further appears from the record that the court limited the number of impeaching witnesses to four on a side. It is contended by the appellant that it was error for the court to so limit the number of witnesses of that character, but we are of the opinion that it was clearly within the discretion of the trial court to so limit the number, and that in so doing it committed no error. The impeachment of witnesses is a collateral issue, and therefore it was competent for the court to limit the number of witnesses. State v. Beabout, 100 Iowa 155, 69 N. W. 429; Fisher v. Conway, 21 Kan. 18; 1 Thompson on Trials, § 353; 16 Cyc. 1277; 12 Cyc. 555; Mergentheim v. State, 107 Ind. 567, 8 N. E. 568; Butler v. State, 97 Ind. 378; Everett v. Union Pac. Ry. Co., 59 Iowa, 243, 13 N. W. 109; State v. Rutherford, 152 Mo. 124, 53 S. W. 417. In State v. Beabout, supra, in which the trial court had limited the number of witnesses, the Supreme Court says: "The enforcement of such a rule is within the discretion of the district court, and we discover no reason for holding that the discretion was abused." In Fisher v. Conway, supra, the Supreme Court of Kansas, speaking by Brewer, J., in discussing the question as to limiting the number of witnesses, says: "It is doubtless true as to any collateral matter as the impeachment of a witness that the court may restrict the number of witnesses. and, unless it appears that there has been an abuse of discretion in this respect, no error will lie."

On the trial the following question was propounded to the defendant: "Q. Mr. Madison, Mr. Van Slyke asked you on cross-

examination if you had been convicted of any offense against the law relating to the sale of intoxicating liquor, and you replied that you pleaded guilty to the offense of keeping open after hours. I ask you whether at the time of that offense to which you pleaded guilty you were yourself personally present at the town where your saloon was kept open?" To this the state's attorney objected as immaterial, and the court sustained the objection, to which defendant excepted. He was then asked: "Q. I will ask you, Mr. Madison, if that offense to which you pleaded guilty was the offense of your bartender keeping the doors open after 11 o'clock during your absence from town?" This was objected to and the objection sustained by the court, and exception taken. It is contended by the appellant that, as the defendant had stated in reply to the question of the state's attorney that he had pleaded guilty to the offense, he was entitled to explain as to the manner in which the offense was committed. This, however, in our opinion, was immaterial, and was an attempt to introduce before the jury a collateral issue which would tend to divert the minds of the jury from the main question involved in the case. Commonwealth v. Galligan, 155 Mass. 54, 28 N. E. 1129; Gallagher v. People, 211 Ill. 158, 71 N. E. 842. In the former case it was held by the Supreme Court of Massachusetts, as appears by the headnote, as follows: "At the trial of a criminal case a witness called by the defendant was asked upon cross-examination whether he was the same person who was convicted of larceny at a court and at a time named in the question, and replied in the affirmative. The defendant's counsel then asked the witness to state the facts and circumstances connected with the transaction, and the presiding judge refused to permit the witness to answer. Held, that the testimony was properly excluded."

On the trial it was disclosed by the evidence that under a search warrant issued by the justice of the peace there was found in the dwelling house of the defendant a quantity of intoxicating liquors consisting of whisky and wines, in jugs and barrels partially filled, and pint and quart bottles, and these were offered in evidence, to which the counsel for the defendant objected as irrelevant and immaterial, and for the reason that they were taken by a

search warrant issued against a place which is shown to have been a dwelling house, and no part is shown to have been occupied as a store, shop, hotel, boarding house, or place of public resort; and the evidence is inadmissible for the further reason that it is not unlawful, and no evidence of the fact that it was kept for unlawful sale, if liquor is found in any person's private dwelling house. The objection was overruled, and the defendant excepted. It is contended by the appellant that, as these liquors were obtained by reason of a search warrant from the dwelling house of the appellant, they were not properly admissible as evidence in the case under the provisions of section 8, c. 173, p. 363, Laws 1907, which provides: "No warrant shall be issued to search a private residence occupied as such, unless it, or some part of it is used as a store or shop, hotel or boarding house, or unless such residence is a place of public resort." It is further contended by the appellant that the admission of this evidence was in violation of articles 4 and 5 of the Constitution of the United States, and of sections 9 and 11 of article 6 of the Constitution of South Dakota, and hence that, the search warrant being unlawfully issued, the effect of the evidence was to compel the defendant to furnish evidence against himself. It is claimed by the appellant that the state's attorney conceded that the search warrant was illegally issued. If such was the fact, the learned state's attorney may have made an unwarranted admission, as a dwelling house, when it is shown that intoxicating liquors are kept therein; and sales made therein, may be properly regarded as a shop or place of public resort. But, in the view we take of this case, it will not be necessary to decide that question at this time, but, assuming for the purposes of this decision that the search warrant was illegally issued, it does not follow that the articles obtained by means of such warrant may not be introduced in evidence, for the great weight of authority seems to be in favor of such evidence, without regard to the manner in which it was obtained. In the case of Williams v. State of Georgia, 100 Ga. 511, 28 S. E. 624, 39 L. R. A. 269, decided by the Supreme Court of that state in 1896, it was held that: "There was no error on the trial of a criminal case in admitting against the accused evidence showing that she had upon her person and about

her premises articles the possession of which, though not in itself criminal, tended to establish her guilt of the offense with which she was charged, notwithstanding it appeared that the discovery of these articles was made by forcibly entering into her house, and there searching the same and her person, without any warrant or authority of law. Although the search and seizure may have been unlawful, unwarranted, unreasonable, and reprehensible, this did not affect the admissibility of the evidence obtained as a result thereof." The learned Supreme Court in an exhaustive opinion, and after a full review of the authorities, arrived at the conclusion, as we have seen, that articles obtained by means of an illegal search are admissible as evidence in the case, notwithstanding the illegal manner in which they were obtained. In the course of its opinion the court says: "The position assumed by counsel for the accused does not present for determination a new question. That evidence pertinent and material to the issue is admissible, notwithstanding it may have been illegally procured by the party producing it, was early settled by the English courts. The case of Legatt v. Tollervey, 14 East, 302, to this effect, decided in 1811, followed a previous ruling made in Jordan v. Lewis (1739) the substance of which is stated in a note, as the report of the latter case in 2 Strange, 1122, was meager and imperfect. And such was the rule observed in subsequent decisions. Caddy v. Barlow, 1 Mann. & R. 275; Stockfleth v. De Tastet, 4 Campb. 10; Robson v. Alexander, 1 Moore & P. 448. In this country the question certainly arose as early as 1841. Commonwealth v. Dana, 2 Metc. (Mass.) 329. There it was insisted that the issuing of a warrant authorizing a search of the premises of the accused, who was suspected of having in his possession lottery tickets, invaded his constitutional right to be secure against unreasonable searches and seizures, and 'that the seizure of the lottery tickets and materials for a lottery for the purpose of using them as evidence against the defendant * * * (was) virtually compelling him to furnish evidence against himself in violation of another article in the Declaration of Rights.' But Wilde, J., speaking for the Supreme Court of Massachusetts, summarily disposed of this contention by saying (page 337 of 2 Metc.): 'Admitting that the lottery tickets and materials were illegally

seized, still this is no legal objection to the admission of them, in evidence.'" The Supreme.. Court of Georgia proceeding says: "Such has been the view since entertained, and consistently adhered to, by the Massachusetts court"—citing a large number of Massachusetts cases. . The court, after reviewing a large number of the· American decisions upon the subject, takes up the case of Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, cited in that case, as in the case at bar as authority for the contention of the defendant, and says: "We do not think the decision rendered in that case is authority supporting this contention. A clear statement of the issues raised in it, and of the precise questions passed on by the federal Supreme Court, is to be found in· Gindrat v. People, 138 Ill. 103, 27 N. E. 1085," in which the Supreme Court of Illinois, after citing a number of cases in point, concludes that that decision· does not affect the questions presented in the case then before it, and clearly shows that .the Boyd case is distinguishable by reason of the peculiar circumstances connected with that case, and held as appears by the headnote: "Though papers and other subjects of evidence have been illegally taken from the possession of the party against whom they were. offered, or otherwise unlawfully obtained, .this is no valid objection to their admissibility, if they are pertinent to the issue. The court will not form an issue to determine that question." The cases sustaining this view of the law are very numerous, but we only cite the following as bearing upon this question: Commonwealth v. Smith, 166 Mass. 370, 44 N. E.. 503.; Commonwealth v. Welch, 163 Mass. 372, 40 N. E. 103; State v. Flynn, 36 N. H. 64; Shields v. State, 104 . Ala. 35, 16 South. 85; State v. Griswold, 67 Conn. 290, 34 Atl. 1046, 33 L. R. A. 227; Starchman v. State, 62 Ark. 538, 36 S. W. 940; State v. Pomeroy, 130 Mo. 489, 32 S. W. 1002; Bishop's Crim. Proc. § 246; 1 Bishop's New Crim.. Proc. p. 148; Greenleaf on the Law of Evidence, § 254a; Taylor on Evidence (9th Ed.) 922. Mr. Bishop in the·sections cited says; "The evidence which a search warrant procures may be ·used against the ·party; not being inadmissible as an admission under duress or as furnished by the prisoner through compulsion against himself, or

as otherwise unfairly or illegally obtained, even if the search warrant was illegally issued." Mr. Greenleaf in his treatise on the Law of Evidence, supra, says: "It may be mentioned in this place that though the papers and other subjects of evidence may have been illegally taken from the possession of the party against whom they are offered, or otherwise unlawfully obtained, this is no valid objection to their admissibility if they are pertinent to the issue. The court will not take notice how they were obtained, whether lawfully or unlawfully, nor will it form an issue to determine the question." Similar language is used by Taylor in his work on Evidence. We are clearly of the opinion, therefore, that the learned trial court committed no error in admitting in evidence proof as to the intoxicating liquors found in the possession of the defendant. The evidence was clearly competent, and tended to corroborate the evidence and theory of the prosecution that the defendant was engaged in the illicit sale of intoxicating liquors without a license.

It is further contended by the defendant that the court erred in instructing the jury as follows: "* * * That the undisputed evidence in this case shows that on the 21st day of January, 1908, the defendant had in his possession, at his place of residence or dwelling house in Groton, Brown county, S. D., a quantity of intoxicating liquors, which has been offered in evidence in this case." And also that the court erred in the following instruction to the jury: "The court further instructs the jury that the undisputed evidence in this case shows that the defendant during the month of January, 1908, did not have a license or permit to sell intoxicating liquors at retail within the city of Groton, Brown county, South Dakota." The contention of the defendant in regard to these instructions is that they are instructions upon facts, and not authorized to be given under section 256, Code Civil Procedure, which provides: "The court in charging the jury shall only instruct them as to the law of the case." We are of the opinion that this objection is untenable, and that it is proper for the court in a case in which there is no conflict in the evidence to instruct the jury that such evidence is undisputed. As before stated, it was shown by the evidence of the deputy sheriff that certain intoxicating liquors were found in the dwelling house of the

defendant, and the defendant, when a witness upon the stand, admitted that he had such liquors in his possession and in no manner contradicted the statement of the deputy sheriff. Clearly, therefore, the fact that he had such intoxicating liquors in his possession as testified to by the deputy sheriff, was uncontradicted. It was also proved upon the trial by the testimony of the county auditor that no license had been issued to the defendant authorizing him to sell intoxicating liquors within the city of Groton during the year in controversy. This evidence was undisputed. The defendant as a witness upon the stand in his own behalf did not claim that he had any such license or authority, and his only defense in the action seemed to be a denial of the sale of the bottle of whisky to O'Day as testified to by the said O'Day. In view, therefore, of the fact that the evidence as to these questions being uncontradicted, it was properly brought to the attention of the jury, that their minds might be properly directed to a consideration of the disputed question of fact, namely, the sale of the bottle of whisky to O'Day as testified to by him. State v. Kinney, 21 S. D. 390, 113 N. W. 77.

It is further contended by the appellant that the court erred in its instruction to the jury, in which it instructed them that a witness might be impeached by witnesses who testify that they are acquainted with the reputation of the witness for the reason that the court failed to use the word "general" in the instruction, but as stated by us under the argument as to the impeachment of witnesses, though the word "general" was not used, words of similar import were used, and, when the court instructed the jury that the reputation of the witness sought to be impeached for truth and veracity in the neighborhood where such witness resided was in effect, a compliance with the rule. The whole instructions of the court upon this subject state clearly the law applicable to this class of cases. It is as follows: "One of the methods known to the law for impeaching a witness that is discrediting his testimony is by calling other persons as witnesses who testify that they are acquainted with the reputation of the witness sought to be impeached for truth and veracity in the neighborhood where such witness resides, and that such reputation is bad. * * *" Then the

jury have a right to disregard the testimony of the witness. While undoubtedly it would have been better to have used the word "general," its omission is a mere technical error, for which the defendant is not entitled to a reversal of the judgment. By section 500 of the Code of Criminal Procedure, it is provided: "After hearing the writ, the court must give judgment without regard to technical errors or defects or to exceptions which do not affect the substantial rights of the parties." Clearly the error, if any, in no way prejudiced the defendant.

Finding no error in the record, the judgment and order denying a new trial are affirmed.

McCOY, J., taking no part in this decision.