## STATE v. N. S. RANDALL.[1]

### July 3, 1919.

### No. 21,284.

**Army and navy — violation of 1917 act — case followed.**

1. The defendant was convicted of violating chapter 463, Laws 1917, in a public address delivered on August 18, 1918, at Kenyon, Minnesota. The language employed is not essentially different from that spoken by Joseph Gilbert on the same occasion, resulting in his conviction, affirmed by this court. State v. Gilbert, 141 Minn. 263, 169 N. W. 790. Nearly all the errors assigned are identical with those assigned in the Gilbert case, and are ruled by the decision therein.

**Limiting number of witnesses prejudical error.**

2. The trial court should not attempt to limit the number of witnesses of a party upon the main controverted issue or controlling fact of a case, unless it becomes apparent that there is a purpose to trifle with the administration of justice. The main issue in this case was what defendant said on the evening in question, and it was prejudicial error to limit the number of his witnesses to 12 of the 27 he had produced to testify on that subject.

**Repetition of defendant's speech.**

3. Defendant was entitled to repeat, if he could, all that he said on that occasion.

Defendant was indicted by the grand jury of Goodhue county charged with the crime of discouraging enlistment in the military and naval forces of the United States and advocating that citizens should not aid

[1]Reported in 173 N. W. 425.

and assist the United States in carrying on war with its public enemies. Defendant's demurrer to the indictment upon the grounds that more than one offense was charged, and that the facts stated did not constitute a public offense, was overruled. The case was tried before Converse, J., who at the close of the testimony denied defendant's motion to direct a verdict for the defendant and his motion to dismiss the action and to order a mistrial, and a jury which found defendant guilty as charged in the indictment. From an order denying his motion for a new trial, defendant appealed. Reversed.

*George Nordlin, Frederic A. Pike, Arthur Le Sueur* and *Thomas V. Sullivan,* for appellant.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Assistant Attorney General, and *Thomas Mohn,* for respondent.

HOLT, J.

Defendant, convicted of an offense under chapter 463, p. 764, Laws 1917, appeals from an order denying his motion for a new trial.

The indictment charged that on August 18, 1917, in the village of Kenyon, Goodhue county, Minnesota, in a public place where more than five persons were present, naming seven, defendant unlawfully and wilfully taught and advocated by oral speech that men should not enlist in the military and naval forces of the United States and that citizens should not assist in prosecuting the war with Germany by then and there stating and expressing to the persons named in substance and effect as follows, to-wit: "The rot that is being pulled off nowadays by our government with reference to this war is something so disgraceful that you have no idea of it. If the money of the rich were thrown into the war-chest, this war would end immediately. We must save food for the allies, they say; we must save food for them whether we get anything for ourselves. This is what makes high prices. The President of the United States has too much power in this country and he uses it to suit himself."

The sentences set out were uttered in the course of a public address, delivered by defendant to an audience of about 200 persons in the village of Kenyon, on the evening of the day mentioned. The meeting was held for the purpose of promoting the Nonpartisan League and gaining

it adherents. Defendant was an organizer and lecturer of the league. It was an open air meeting, the speakers occupying a portable band stand some ten feet from the sidewalk on the main street of the village. Mr. Gilbert and Mr. Martin, two other organizers or lecturers of the league, also spoke. Defendant spoke twice, the first time occupying about half an hour, and the last only a few minutes. Mr. Gilbert was also indicted, tried and convicted of violating chapter 463, on account of his address on that occasion. The conviction was sustained on appeal. State v. Gilbert, 141 Minn. 263, 169 N. W. 790.

The language which the indictment charges defendant with uttering is of a nature so similar to that set forth in the Gilbert indictment that it must be held to constitute an offense under the rule of that decision. The circumstances under which the language was used would as naturally lead to an inference of guilt in the one case as in the other. The main purpose of the speaker was no doubt to advance the cause of their own political organization and to advocate its principles. In aid of that purpose it might be as proper as it is usual to decry rival political parties, including the one in power, and to criticize the methods employed by those in office from the lowest to the highest. But we think it was for the jury to say whether in so doing they, by making use of the language set out, in connection with their other utterances on that occasion, went too far and taught what chapter 463 forbids.

Following the decisions of State v. Holm, 139 Minn. 267, 166 N. W. 181, L.R.A. 1918C, 304; State v. Townley, 140 Minn. 413, 168 N. W. 591; and State v. Kaercher, 141 Minn. 186, 169 N. W. 699, the opinion in the Gilbert case construed the chapter in question and, as so construed, sustained it against the attack that thereby the right of free speech, guaranteed by the Federal Constitution, was unduly curtailed. And section 3 thereof was upheld against the claim that it was not covered by the title of the act. It was also there decided that intent was not an ingredient of the offense created by chapter 463; that it was not error to receive evidence of remarks made by bystanders, nor to permit a witness to state the manner in which the accused made a statement (here testified to as given in a sneering manner, in the Gilbert case as given in earnest), and that the objection was properly sustained to questions, asked the state's witness in cross-examination, whether they had

taken any steps to prosecute defendant for his alleged seditious talk. These several propositions were raised in the Gilbert case by the same counsel who appeared for this defendant and were as forcible and ably presented by him then as now, but were resolved against him. We still adhere to the views expressed in the Gilbert case; and that decision must therefore rule the instant case, unless prejudicial error be found in the assignments of error now to be considered.

After the state rested and defendant's counsel had made his opening statement to the jury, wherein he indicated that 27 witnesses would testify that defendant did not say what he was charged with saying, the court announced that defendant would be limited to the testimony of 12 witnesses, including himself, as to what was said at that meeting. Counsel excepted, and announced that he had 27 witnesses present to testify, partly to the same facts and partly to an entirely different set of facts. Defendant took the stand, and called 11 other witnesses.

The authorities seem to be in accord on the proposition that the trial court may, in the exercise of sound judicial discretion, limit the number of witnesses as to any collateral fact or as to a given point in criminal as well as in civil cases. State v. Beabout, 100 Iowa, 155, 69 N. W. 429; People v. Casselman, 10 Cal. App. 234, 101 Pac. 693 (character witnesses); Commonwealth v. Thomas, 101 S. W. 326, 31 Ky. Law Rep. 899 (character witnesses); State v. Bowerman, 140 Mo. App. 410, 124 S. W. 41 (on impeachment of witnesses); State v. Lamb, 141 Mo. 298, 42 S. W. 827 (upon alibi).

In Sheppard v. State, 120 Ark. 160, 179 S. W. 168, the court said it was within sound judicial discretion to limit the number of witnesses as to a particular fact, and to decide at what point to stop the introduction of cumulative evidence. We find no case holding squarely that on the main issue the court may limit the number of a party's witnesses, unless it be in Butler v. State, 97 Ind. 378—a murder-charge—where it is said: "If the court had no discretion in such cases, then the case might be indefinitely delayed, and an unlimited number of witnesses called. But for this rule courts would be subject to the caprice of counsel, and public good would seriously suffer. We agree that this discretion should be so exercised as not to impair the rights of a defendant, nevertheless it does exist. But as the power is a discretionary one, an appellate court

can only interfere where it has been abused. If we can say from the record that the discretion has been abused, then we should review the ruling and reverse the judgment. This we cannot say, for the number of witnesses was limited to 45, and this, in itself, was not an unreasonable limitation." It may, however, be said that it does not clearly appear from the case as reported whether this restriction of the number of witnesses applied to those who could testify regarding the main issue.

In Mergentheim v. State, 107 Ind. 567, 8 N. E. 568, a prosecution for maintaining a canal so as to constitute a nuisance, the court following Butler v. State, supra, held it proper exercise of judicial discretion to limit the number of witnesses as to the odor and condition of the canal. It was fixed at seven.

The syllabus in Samuels v. United States, 232 Fed. 536, 146 C. C. A. 494, Ann. Cas. 1917A, 711, states: "It is within the discretion of the trial court to limit the number of witnesses a defendant charged with criminal offense may introduce on a single point in issue, and unless it appears clearly that there has been an abuse of discretion, which was prejudicial to defendant, an appellate court will not consider it cause for reversal." That was a prosecution for using the mails to defraud, the particular fraud consisting in advertising a worthless remedy as a cure-all, thereby obtaining money by misrepresentations. After the defendant had produced 35 witnesses who testified that they had been cured of different ailments by the use of his preparation, the court announced that only six more would be permitted to testify along that line. The court said that at best the evidence was merely cumulative, and it was discretionary whether more than 41 should be allowed to testify.

In re Winslow, 146 Iowa, 67, 124 N. W. 895, Ann. Cas. 1912B, 663, might also be cited as supporting the proposition that on the main issue the number of witnesses to be heard is discretionary with the trial court.

These four cases are the only authorities which might tend to sustain the rule which the learned trial court conceived to be applicable, namely, that it rested within his discretion to limit the number of witnesses. But it is to be noted that had the limitation of the number of witnesses in the instant case been near as generous as in the Butler or Samuel cases defendant would have had no occasion to complain.

However, the weight of authority is to the effect that in neither a

criminal nor in a civil case is it within the province of the court to limit the number of witnesses which a party may offer to prove or disprove the main issue or a controlling fact.

In People v. Arnold, 248 Ill. 169, 93 N. E. 786, a rape case, the court limited the character witnesses to 25, and it was said: "The court fixed that limit for each side, and while a court has no power to limit the number of witnesses to be heard as to a controlling fact, or facts or circumstances bearing thereon, it is not error to fix a reasonable limit concerning collateral matters such as this was."

To the same effect is Green v. Phoenix Mut. Life Ins. Co. 134 Ill. 310, 25 N. E. 583, 10 L.R.A. 576, where the court speaking of this power says: "Familiar illustration of cases in which the discretion could not be exercised where the inquiry is single, as in cases of right of way, the grant of prescriptive right, the proof of custom, or the identity of persons or property, which are disputed, will readily occur to anyone." The trial court restricted the defendant in a slander case to ten witnesses to prove plaintiff's reputation. This was held error in Ward v. Dick, 45 Conn. 235, 29 Am. Rep. 667, the opinion saying: "The subject matter of the inquiry was the value of a reputation. To the law this is a tangible thing; it is property in the highest sense; and we are not aware that in actions for injuries to property courts have assumed the right, either to prevent the plaintiff from establishing the value thereof at the highest possible point to which he could carry it by the power of testimony, or the defendant from diminishing it by the same means; and actions for injuries to character are not exceptions."

In St. Louis, M. & S. R. Co. v. Aubuchon, 199 Mo. 352, 97 S. W. 867, 9 L.R.A.(N.S.) 426, 116 Am. St. 499, 8 Ann. Cas. 822, strong reasons for not restricting the number of witnesses on the main issue are stated in the vigorous and characteristic language of Justice Lamm.

In Barhyte v. Summers, 68 Mich. 341, 36 N. W. 93, a new trial was granted because the court limited the number of witnesses upon a vital issue—the soundness of a horse claimed sold under misrepresentations. This case is approved in the later one of Sulkowski v. Zynda, 160 Mich. 7, 124 N. W. 536, 136 Am. St. 414.

In a case involving the quality of paint purchased, plaintiff desired to take the deposition of 250 witnesses; defendant petitioned to reduce the

number, but the court denied the petition. Carrara Paint Agency Co. v. Carrara Paint Co. 137 Fed. 319. See also Jones, Evidence, §§ 814 and 900, and cases collected in 8 Am. & Eng. Ann. Cas. 828.

We approve of the rule that, upon the vital controverted issue in a case, the trial court should refrain from any attempt to limit the number of the witnesses that a party may offer, unless a purpose to trifle with the administration of justice becomes apparent.

There can be no doubt but that what was said by defendant during this meeting was the main and vital issue in the case. That depended upon the uncertainty and the limitations of the memories of his auditors. The speeches of defendant were made seven months before the indictment and eight before the trial. Probably none of the witnesses anticipated until the return of the indictment ever to be called upon to recount what was said by anyone at the meeting. Necessarily their recollections had become dimmed. The witnesses for the state, with one exception, were professional men. Defendant depended for the most part upon farmers selected from the crowd that was coming and going during the evening. The situation was such as to invite defendant to produce all available testimony. He was charged with an offense so nearly traitorous that a rightful conviction would bring upon him and his a just and enduring shame. He should be accorded full opportunity of proving his innocence. The 12 witnesses he was allowed to use gave their testimony in one day; another day would have sufficed to have heard all. It certainly cannot be said that there was any attempt to trifle with the court or to impede the administration of justice, if one, defending against a charge brought with such serious consequences as this, demanded that another day be consumed in hearing the witnesses he produced. We think the limitation upon the number of defendant's witnesses prejudicial error for which a new trial should be granted.

In view of another trial, it is perhaps advisable to refer to one ruling upon the admissibility of certain testimony. When defendant took the stand, and after he had testified that he said nothing about the war in his first speech, he was asked to relate what he told the audience, and he proceeded to deliver his speech. After a few sentences had been given the county attorney objected, saying: "If this witness said nothing about the war in his first speech, in view of that, I don't think it is nec-

143—M. 14

essary he goes on and repeats his speech." The objection was sustained, and defendant's counsel said: "We except to the refusal of the court to allow the defendant to state what he said and all he said at the meeting at Kenyon." We think defendant was entitled to repeat all he said at the meeting in question. The state was permitted to introduce evidence of remarks made by defendant during the meeting other than those charged in the indictment, and properly so. In fact, some of the witnesses for the state testified that the remarks .set out in the indictment occurred during the first speech. The defendant should therefore have been allowed to state all he said, if he so desired. It was from all that was said by and to defendant that the jury were to determine whether the natural and reasonable effect of what he uttered was to deter his auditors from enlisting or from rendering aid in the prosecution of the war. This error was perhaps not prejudicial because, later in the trial, defendant seems to have had the opportunity to repeat as much of his speeches as he desired, without any further objection being made. The same holds true in regard to an error in striking out his testimony that he had not said anything against President Wilson or the government in his speech, for he afterwards was permitted to state that he was in perfect accord with the government and that he would champion the President until he could return from the final abode of the wicked on skates.

In view of our conclusion that the order limiting the number of defendant's witnesses was so prejudicial to his rights that a new trial must be had, we need not refer to other matters assigned as error that are not likely to again arise.

Order reversed.